Nicholas MALDONADO, Plaintiff,

v.

David MATHEWS, Secretary of Health, Education and Welfare, Defendant.

No. 75–C–1028.

United States District Court, E. D. New York.

Nov. 17, 1976.

Meltzer & Fishman, New York City by Stanley F. Meltzer, New York City, for plaintiff.

David G. Trager, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., by Edward S. Rudofsky, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

## MEMORANDUM OF DECISION

NEAHER, District Judge.

Plaintiff has moved for summary judgment in this action to review a determination of the Secretary of Health, Educa-

tion and Welfare (the Secretary) denying him disability insurance benefits under the Social Security Act (the Act), 42 U.S.C. §§ 405(g), 416(i), 423. The theory of the motion appears to be that the court may reweigh the evidence before the administrative law judge and direct judgment in accordance with its preponderance as plaintiff sees it. The court's function on review, however, is limited by law to determining whether the decision of the Secretary is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Gold v. Secretary of Health, Education & Welfare*, 463 F.2d 38, 41 (2d Cir. 1972).[1] If it does, that concludes the matter, even though the court may disagree with the result.

### Facts

Plaintiff first applied for disability benefits on November 4, 1973. After denial of his claim for benefits on initial consideration and reconsideration by the Bureau of Disability Insurance of the Social Security Administration, he sought, and was granted, a hearing before an administrative law judge. The hearing, at which he was represented by counsel, was held on January 21, 1975. The administrative law judge considered the case *de novo*, and rendered his decision on January 30, 1975, finding plaintiff not entitled to benefits under the Act. The Appeals Council upheld the decision on May 14, 1975, making it the final decision of the Secretary. Plaintiff timely filed his application for review in this court on June 27, 1975.

Plaintiff was 45 years old at the time of his claimed disability in November 1969. He was born in Puerto Rico and his total education consisted of three years of school in Puerto Rico, which he left at the age of ten. He began working at thirteen and came here when he was 28 years old. He speaks only Spanish, has minimal reading capacity even in that language, and cannot write, except for his name. He worked as an agricultural laborer, as a porter in a restaurant carrying trays and washing dishes, and lastly as a floorman moving heavy boxes and cartons in shipping and receiving operations of a container manufacturer.

On November 1, 1969, while so employed, plaintiff wrenched his back in attempting to pull a defective skid loaded with heavy cartons and has not returned to work since then. He testified (through an interpreter) that he wishes he could return to work but cannot because of the pain around his waist. The record shows that in 1966 he had previously suffered an on-the-job back injury and had been unemployed thereafter for a period of 21 months because of it. He last met the earnings requirement that permits coverage as an insured individual under the Act on September 30, 1973.

### Discussion

The administrative law judge in a 16-page decision reviewed in some detail the medical evidence bearing upon the question of plaintiff's "disability" within the meaning of the Act.[2] In the judge's view, the preponderance of that evidence failed to establish that plaintiff "has impairments of sufficient severity and duration so as to constitute a 'disability' within the meaning of the law during the alleged period." Tr. 27. Unfortunately, the judge formulated

---

1. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *Universal Camera Corp. v. NLRB,*, 340 U.S. 474, 477–87, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). However, it "must do more than create a suspicion of the existence of the fact to be established." *NLRB v. Columbian Enameling & Stamping Co., supra.*

2. "(d)(1) The term 'disability' means—
    (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

his formal findings in the conclusory language of the Act. This renders it difficult for a reviewing court to ascertain with assurance what facts were found concerning the plaintiff's ability to undertake gainful employment during the period of his insured coverage.

The judge's discussion of the medical evidence leaves little doubt that he accepted the preponderant medical opinion that plaintiff was disabled from returning to his former laboring occupation or anything like it. This is evident from the judge's concentration on the question of plaintiff's "residual functional capacity," i. e., his ability to engage in other kinds of work prior to September 30, 1973. In resolving that question adversely to plaintiff's claim of total occupational disability, the administrative law judge relied primarily upon testimony of two doctors who appeared at the hearing and who seemed to agree that plaintiff could perform certain limited physical activities as hereafter described.

Dr. Justus I. Kaufman, a general surgeon, who testified for plaintiff, and whose only examination of plaintiff occurred on December 12, 1974, found him suffering from a severe lumbosacral sprain, which, together with a superimposed psychogenic overlay, had produced a continuous disability since November 1, 1969. In his opinion, plaintiff's condition was worse in 1973 than it was at the time of the accident in 1969, and prevented plaintiff from engaging in substantial gainful work. Dr. Kaufman conceded that plaintiff could sit for perhaps one and one-half hours, stand for one and one-half hours, could walk five blocks, and could use public transportation.

Dr. Herbert G. Cohen, an orthopedic surgeon, called by the administrative law judge as a neutral medical advisor, who did not examine plaintiff at all, testified on the basis of medical reports of other doctors that plaintiff had a mild arthritis which would give rise to pain from time to time. On cross-examination he conceded plaintiff had the residuals of a low back injury; that he may have had a sprain of the lower back that could indicate the tearing of muscle tissue; that he had osteoarthritis; and that a disc pathology could not be ruled out. He was also of opinion that these conditions could have existed as early as 1969, including a psychogenically derived hypesthesia. Nevertheless, it was his opinion based in part on Dr. Kaufman's testimony and the report of an examination made by Dr. Frank P. Vaccarino, an orthopedic surgeon, in February 1974, that as of September 30, 1973, plaintiff could lift and carry somewhat more than 15 pounds, stand for more than three hours, sit for more than two hours, walk for 12 to 13 blocks, climb two to three flights of steps slowly, and use public transportation, but could not engage in any occupation requiring sustained or repetitive bending.

Neither of the testifying doctors nor Dr. Vaccarino had examined plaintiff prior to September 30, 1973.[3] The medical reports in evidence show that plaintiff's treating doctor was Dr. George J. Seaman, an orthopedic surgeon, who had seen plaintiff six days after his accident and treated him weekly thereafter until May 1974, at which time he concluded nothing more could be done and that plaintiff had a permanent disability and was unable to return to his former work. The New York Workmen's Compensation Board was of a similar view, finding that plaintiff had a severe unstable low back and was under a total industrial disability. This was also the opinion of Dr. Alcides C. Pomina, a neurologist, who examined plaintiff on November 24, 1969 on referral from Dr. Seaman.[4]

---

3. Dr. Vaccarino's examination on February 4, 1974 found plaintiff suffering from osteoarthritis of the lumbar and sacral spine associated with degenerative disc disease, and that further orthopedic care was warranted.

4. Plaintiff was also examined in 1969 and 1970 by orthopedic surgeons retained by workmen's compensation carriers for his employer. Dr.

Bernard Kaye in December 1969 found plaintiff's gait to be normal and that he could undress himself without difficulty. While acknowledging that plaintiff may have had some "aggravation of the pre-existing low back pathology," Dr. Kaye reported that any restrictions on back or leg motion appeared to be the

While acknowledging that the medical evidence was "not entirely consistent," the administrative law judge relied on Dr. Cohen's description of plaintiff's estimated physical capabilities as the basis for his conclusion that plaintiff possessed sufficient residual functional capacity as of September 30, 1973, to enable him to perform other types of jobs existing in the New York metropolitan area.[5] For the reasons which follow, the court is of opinion that such a conclusion is not supported by substantial evidence on the record as a whole.

A finding that the plaintiff has limited physical ability to walk, sit, lift, climb or use public transportation does not suffice to establish his potential "to engage in substantial gainful activity" during the insured period. Where, as here, it has been accepted, if not expressly found, that plaintiff is physically incapacitated from resuming his former lifelong laboring occupation, the Secretary must come forward with credible evidence showing that despite such physical impairment, the plaintiff's residual physical and mental capacity, taking into consideration his age, education and work experience, is such as to warrant the conclusion that other types of employment exist which he could have performed.[6]

The Secretary sought to meet that burden in this case through the opinion testimony of a vocational expert, Arthur I. Bierman, whose qualifications were conceded by plaintiff's attorney. Mr. Bierman was asked in a hypothetical question to assume the plaintiff's age, limited education and borderline literacy even in Spanish, the laboring nature of his prior work experience, and his limited physical capability as already described. On that basis Mr. Bierman voiced the opinion that while plaintiff could not have returned to his prior agricultural and industrial jobs, he could have performed during the insured period the unskilled, repetitive, sedentary and light work of an assembler, polisher, buffer, packer or wrapper, machine operator, solderer or inspector. These occupations, he testified, presently exist in the New York metropolitan area in the toy, optical, electronic, electrical parts, jewelry, novelty and plastic industries, and he cited governmental statistical sources showing the substantial numbers of persons so employed. In his opinion the plaintiff could have been trained to perform such work in an on-the-job basis in a matter of two or three to ten days.

The rule that a finding of ability to engage in substantial gainful employment cannot be merely theoretical is longstanding in this Circuit. *Kerner v. Flemming*, 283 F.2d 916, 921 (2d Cir. 1960). The test formulated in *Kerner* still applies. "What can applicant do, and what employment opportunities are there for a man who can do only what applicant can do?" *Id.* After careful examination of this record, the court is unable to detect an adequate answer to either of those questions.

As to the first question, of the seven doctors who examined plaintiff, only one—

result of a "volitional element" on plaintiff's part. In Dr. Otto C. Kestler's examination in December 1970, the diagnosis was a resolved recurrent lumbosacral sprain, with no further treatment indicated and disability only "mild partial" due to both the 1966 and 1969 accidents.

On June 27, 1974 plaintiff was again examined by Dr. Israel Gottlieb, a neuropsychiatrist, who found that he was unable to walk on his toes or heels, that the movements of the spine were restricted and straight-leg raising limited on both sides.

5. In so concluding, he also noted he was reversing his position at the hearing and receiving Dr. Kaufman's conclusion that the claimant as of December 1974 was "totally disabled." Tr. 27.

6. *See Meneses v. Secretary*, 143 U.S.App.D.C. 81, 442 F.2d 803, 806 (1971); *Hernandez v. Weinberger*, 493 F.2d 1120 (1 Cir. 1974) *reaffirming Reyes Robles v. Finch*, 409 F.2d 84 (1 Cir. 1969); *Baker v. Gardner*, 362 F.2d 864 (3 Cir. 1966); *Taylor v. Weinberger*, 512 F.2d 664 (4 Cir. 1975) *reaffirming Hicks v. Gardner*, 393 F.2d 299 (4 Cir. 1968); *Gray v. Finch*, 427 F.2d 336 (6 Cir. 1970); *Stark v. Weinberger*, 497 F.2d 1092 (7 Cir. 1974); *Rosin v. Secretary*, 379 F.2d 189 (9 Cir. 1967); *McMillin v. Gardner*, 384 F.2d 596 (10 Cir. 1967); *Terio v. Weinberger*, 410 F.Supp. 209 (W.D.N.Y.1976); *Robinson v. Richardson*, 360 F.Supp. 243 (E.D.N.Y. 1973).

Dr. Otto C. Kestler—concluded that he had a "partial" disability due to his 1966 and 1969 accidents. No medical testimony or report of record throws any light upon the extent to which plaintiff's limited physical capabilities enable him to perform light or sedentary work, other than Dr. Vaccarino's finding that there were "no restrictions for fine and gross manipulations of the upper extremities." While that might lead one to conclude plaintiff could do work with his arms and hands, it must be borne in mind that for some 30 years he had used those extremities only in conjunction with a strong back and for purposes which called for no special skills. The medical evidence appears to be substantially unanimous that plaintiff's back was severely impaired in 1969 and deteriorated thereafter from year to year. All we are left with are the varying estimates of two doctors who saw him in 1974—Vaccarino and Kaufman—as to the distance plaintiff could ambulate, how much he could lift or climb, and how long he could sit or stand, with the medical advisor preferring Dr. Vaccarino's estimate.

The record is even less enlightening as to the second question—what re-employment opportunities existed for this plaintiff? Certainly the mere recitation of types of jobs and the numbers of people employed do not answer the question as to this plaintiff. The opinion of an expert is no better than the reasons which support it. There was no development of any information as to what physical or mental qualifications any of the enumerated jobs required or any attempt made to relate those requirements to the plaintiff's limited physical capabilities and his even more limited educational background. Nor did the expert advance any reasons to explain how this functionally illiterate non-English speaking former laborer could communicate with any employer offering the kinds of work the expert enumerated or obtain the necessary instruction to perform such jobs.

Common sense and experience tell us that even unskilled work requires some ability to read, write and communicate with superiors or fellow-employees. English, moreover, is the language of the national economy, despite the expert's statement that Spanish-speaking persons are able to find employment in a metropolitan area such as New York. No data was provided as to what kind of jobs such persons are employed in, how many are so employed, or the extent of their education, skills or work experience.

Obviously the more restricted an individual is in terms of limited education, language problems, age, physical problems, etc., the less likely he is to be able to adjust to another job unless the restrictions are offset by transferable skills from his former work experience or training. During the period of insured coverage, between November 1969 and September 1973 this plaintiff attained the age of 49, was under weekly orthopedic care, and received no vocational training to fit him for other work. No evidence of any kind was developed in the record to warrant a finding that he had any transferable skills to enable him to perform other kinds of work than the heavy laboring he had done for some 30 or more years. This case, in short, falls substantially within the Secretary's own regulation explaining the meaning of "disability" under the Act. As pointed out in 20 C.F.R. § 404.1502:

(c) Where an individual with a marginal education and long work experience (e. g., 35 to 40 years or more) limited to the performance of arduous unskilled physical labor is not working and is no longer able to perform such labor because of a significant impairment or impairments and, considering his age, education, and vocational background is unable to engage in lighter work, such individual may be found to be under a disability. . .

There is here no credible evidence that plaintiff, whose functional illiteracy is manifest, has any training or past work experience which qualifies him for substantial gainful work in another occupation consistent with his impairment, either on a full-time or a reasonably regular part-time basis.

The determination that plaintiff is not disabled within the meaning of the Act is not supported by substantial evidence. Three years having elapsed since the claim was filed, plaintiff's motion for summary judgment reversing the determination of the Secretary is granted and the case is remanded with directions to award plaintiff the disability benefits to which he is entitled.

SO ORDERED.