**Susie M. GRABLE, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

**Civ–76–199.**

United States District Court, W. D. New York.

Dec. 21, 1977.

---

Mattar, Mattar, D'Agostino & Kogler, Buffalo, N.Y. (James F. Kogler, Buffalo, N.Y., of counsel), for plaintiff.

Richard J. Arcara, U.S. Atty., Buffalo, N.Y. (Richard E. Mellenger, Asst. U.S. Atty., Buffalo, N.Y., and Jerome T. Levy, Acting Regional Atty., Sidney A. Sayovitz,

Asst. Regional Atty., and Thomasina Rogers, Legal Asst., Dept. of Health, Ed. & Welfare, New York City, all of counsel), for defendant.

CURTIN, Chief Judge.

This action was initiated by Mrs. Susie M. Grable, pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Secretary of Health, Education and Welfare denying her disability insurance benefits under §§ 216(i) and 223.

Plaintiff filed an application for a period of disability and for disability insurance benefits on February 7, 1974, alleging that she became unable to work on November 8, 1972 as a result of an on-the-job accident in which she lost the use of her right hand. She claimed that this loss of use, coupled with attendant emotional problems and arthritis, rendered her disabled under the Social Security Act. The application was denied initially and on reconsideration by the Social Security Administration. On appeal, the Administrative Law Judge [ALJ] held a de novo hearing. On December 30, 1975, he found that the plaintiff was not disabled within the meaning of §§ 216(i) and 223 of the Act. The ALJ's decision became the final decision of the Secretary of Health, Education and Welfare when it was affirmed by the Appeals Council on March 18, 1976. The plaintiff then appealed the Secretary's decision to this court. The case is now before the court on motions of both plaintiff and defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

To qualify for disability benefits under the Social Security Act, a claimant must establish that he or she has insured status, has not attained the age of 65, has filed an application for benefits, and is under a disability as defined by the Act. Under § 223(d)(1)(A), a person is considered disabled if he or she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or last for at least twelve months.

Section 223(d)(2)(A) of the Act defines "substantial gainful activity" to include not only the claimant's previous work but, considering the claimant's age, education, and work experience, any other substantial gainful work which exists in the national economy in significant numbers, regardless of whether such work exists in the immediate area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. The burden of establishing disability is on the claimant, and the impairments must be demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), (d)(5).

The scope of judicial review of the Secretary's decision is limited. Section 205(g) provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Under this standard, the reviewing court may not try the case de novo or substitute its findings for those of the Secretary. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Where there is conflicting evidence, it is the Secretary, and not the reviewing court, who must resolve the conflict. *Id.* The single issue before the court is whether the Secretary's decision is supported by substantial evidence.

The record in this case reveals the following facts, which are not in dispute. Mrs. Grable is a 46-year-old married woman with five children. On November 8, 1972, while working for American Allsafe Company, she accidently crushed her right hand in a molding press. On the basis of this hand injury, which eventually required amputation of most of the hand, her resulting emotional problems and her arthritis, plaintiff claims entitlement to disability insurance benefits. The insured status of plaintiff at all times was determined in her favor and is not in dispute.

The medical evidence of record is as follows:

Plaintiff submitted into evidence a letter dated December 20, 1972 from Dr. George Reading, written to the Workmen's Compensation Board. Dr. Reading is the plastic surgeon who has treated plaintiff since the accident. The letter describes in detail plaintiff's injuries and the medical procedures performed on her hand. In essence, a debridement was performed which involved the amputation of the little and ring fingers through the distal metacarpals, amputation of the index finger at the proximal metacarpal level, and amputation of the mid finger at the level of the PIP joint. The thumb was not amputated. In the same letter Dr. Reading states that he felt plaintiff would have permanent loss of the entire use of her hand, but that an attempt to give her a thumb and something to oppose the thumb would be made.

In a telephone conversation with the State Department of Social Services on July 12, 1974, Dr. Reading stated that although Mrs. Grable had been fitted with a prosthesis, she would never regain the use of her right hand in a practical sense. He also stated that she was learning to write with her left hand, having previously been right-handed, and that she could perform the functions of daily living adequately with her left hand. He noted that there were no conditions significant to her recovery other than obesity.

In a letter dated December 18, 1974 and addressed to plaintiff's attorneys, Dr. Reading suggested that a tendon transfer might improve the strength of the pinch in Mrs. Grable's right thumb, but that any improvement would be minimal and that she should be considered to have 100% loss of the use of her right hand.

On November 8, 1973, plaintiff was examined by Blase E. Heckman, M.D., a general practitioner for the Workmen's Compensation Board. He stated that "from a medical point of view, the condition of the right hand represents a total disability," and that different gainful employment might be obtained through a referral to the Rehabilitation Unit.

On February 28, 1975, plaintiff was examined by Henry C. Everett, M.D., a general surgeon. In his report he stated that Mrs. Grable had complained of pain in both knees and the left shoulder due to arthritis and that "she is totally disabled at present."

Finally, plaintiff was referred by her attorney to Dr. Emanuel Amato, a psychiatrist. In his report of March 18, 1975, Dr. Amato observed that "Mrs. Grable appeared quiet [and] somewhat withdrawn." He noted that she continuously held her right hand with her left hand as if she were trying to hide it. Dr. Amato reported that Mrs. Grable was very concerned because she could not return to American Allsafe, that she felt embarrassed when she was with people, that she was very self-conscious, and that she felt she should hide. He also stated that she had developed definite feelings of depression, being concerned about her future, and that she did not enjoy the things that she used to enjoy. In conclusion, Dr. Amato said:

I strongly feel that this injury was a serious blow to Mrs. Grable's mental health and I strongly believe that the combination of physical and emotional injury has been very debilitating and I consider her permanently and totally disabled.

The nonmedical evidence of record is as follows:

Plaintiff testified at the hearing that she completed high school in Georgia, but received no vocational training either in high school or after high school. Prior to moving to Buffalo in 1953, she worked in a laundry pressing clothes. She began work in Buffalo in 1963 cleaning offices. She then worked as a vegetable inspector and as a maid. In 1968 she worked for Trico Industries assembling windshield wiper blades. In 1969 she began working for American Allsafe, assembling safety goggles. She also operated a punch press and a molding machine. Plaintiff terminated her employment with Allsafe after her accident in 1972 and has not worked since that time.

Plaintiff testified that she is right-handed but has been training herself to write

with her left hand. With some difficulty, she cooks, makes beds, and operates a sweeper, but she needs assistance in dressing and cannot perform many household tasks such as ironing. She does the family shopping once a week along with her husband and eldest son. She has some motion in her right thumb and can lift her right arm above her head, but experiences shooting pains in her right wrist if she pushes anything heavy. She takes medication for these pains and for arthritis in her left shoulder and both knees.

Plaintiff was fitted with a prosthesis, but testified that its use is very limited. Plaintiff also testified that she feels depressed at times and stays home a lot. When she is out in public, she feels like people are watching her and wears mittens to cover her hand.

At the ALJ's request, John W. Lange, a vocational expert, appeared at the hearing. Mr. Lange testified that the plaintiff would no longer be able to perform any of her past jobs except possibly that of vegetable inspector. He also testified that considering her age, education, and experience she would be capable of employment as a retail salesperson, elevator operator, security guard, cashier, and messenger. He stated there were limited numbers of elevator operator and messenger jobs, but that the other jobs existed in the Buffalo area in the hundreds.

In the vocational expert's opinion, the plaintiff would still be able to perform these jobs if her arthritis were mild in nature, but would not be able to do them if the pain from arthritis were severe enough to distract her from what she was doing. He also testified that she would be unable to work if her emotional problems caused her to recede from social contacts, feel very self-conscious and uneasy with people, and not go out of the house to make contacts.

In his decision of December 30, 1975, the ALJ found that the evidence failed to establish that plaintiff's impairments, either singularly or in combination, would prevent her from engaging in substantial gainful activity commensurate with her age, education, and work experience. For the reasons stated below, the court finds that the ALJ's decision was not supported by substantial evidence.

The ALJ found that the plaintiff lost nearly 100% of the use of her right hand, but concluded that this by itself did not prevent her from being able to engage in substantial gainful activity. This conclusion was based on the vocational expert's testimony that the plaintiff could find substantial gainful employment as a retail salesperson, an elevator operator, a security guard, a cashier, or a messenger. During his testimony, however, the vocational expert admitted that messenger jobs requiring lifting with only one hand and elevator operator jobs exist only in limited numbers in the area. He also admitted that the plaintiff could not be a cashier in a grocery store because the work would be too fast and would require bagging. Sales jobs would also require bagging, he said, and many security guards must be trained in the use of guns. No medical evidence was introduced into the record showing that Mrs. Grable could realistically perform any of these jobs.

■ Once the applicant establishes that she is unable to return to her previous employment, the burden shifts to the Secretary to demonstrate that the applicant is capable of engaging in other substantial gainful activity existing in the national economy. *Vaughn v. Finch*, 431 F.2d 997, 998–99 (6th Cir. 1970); *Hicks v. Gardner*, 393 F.2d 299, 301 (4th Cir. 1968). Mere theoretical ability to engage in substantial gainful activity is insufficient to defeat an applicant's claim for disability benefits. *Ber v. Celebrezze*, 332 F.2d 293, 295 (2d Cir. 1964). The Secretary must present tangible evidence of reasonable employment opportunities for an individual with the applicant's impairments. *Stancavage v. Celebrezze*, 323 F.2d 373, 377–78 (3d Cir. 1963).

■ In this case, the ALJ specifically found that Mrs. Grable could not return to assembly line work because it required the use of two hands and fine hand manipula-

tions. The burden therefore shifted to the Secretary to submit substantial evidence of her ability to perform other jobs.[1]

█ This burden was not met. The vocational expert's opinion as to the jobs the plaintiff could perform was seriously undermined by his admissions upon cross-examination by the plaintiff's lawyer. On the basis of the evidence set forth in the record, it appears that a person who had lost the use of her dominant hand could not realistically perform any of the jobs suggested by the expert.[2]

The facts in this case are remarkably similar to those in *Thompson v. Mathews*, 561 F.2d 1294 (8th Cir. 1977). In that case, the plaintiff was involved in a work-related accident which necessitated the amputation of his right arm above the elbow. Before the accident, he was right-handed. At the time of his disability hearing before an ALJ, he continued to suffer pain, had not adjusted physically or emotionally to the use of a prosthesis, and could barely write his name with his left hand. The plaintiff established that he had never held any type of employment that did not require the use of two arms. In response to a hypothetical question asking him to assume that the plaintiff could perform light work, a vocational expert testified that the plaintiff

could work as a watchman, a school crossing guard, or a radio dispatcher.

The Eighth Circuit found that the plaintiff had succeeded in shifting the burden of proof to the Secretary by establishing that he could not engage in his former work, and that there was no medical or other evidence in the record that the plaintiff could realistically perform the jobs suggested by the expert. Accordingly, the court granted summary judgment in favor of the plaintiff. This analysis provides strong support for a finding in favor of Mrs. Grable.

An additional ground for reversing the Secretary's decision concerns the evidence of her emotional difficulties. The plaintiff did not base her claim upon her physical impairment alone, but also introduced evidence of arthritic pain and psychological problems. The vocational expert unequivocally stated that she could not perform substantial gainful employment if either of these impairments were severe.

█ Although doctors' opinions on the issue of disability are not binding on an ALJ, an ALJ cannot arbitrarily substitute his own lay judgment for the opinion of doctors. *Klug v. Weinberger*, 514 F.2d 423, 427 (8th Cir. 1975). In this case, Dr. Amato's psychiatric evaluation of Mrs. Grable

---

1. Although the vocational expert testified that Mrs. Grable might be able to return to the assembly line position of vegetable inspector, this possibility was never seriously considered by the ALJ and therefore does not preclude the finding that the burden had shifted to the agency. The ALJ's findings of fact included a determination that the plaintiff could not return to assembly line work and did not mention the possibility of inspecting vegetables. In concluding that she was capable of engaging in substantial gainful employment, he focused exclusively on the positions of salesperson, elevator operator, security guard, cashier, and messenger.

   The ALJ was justified in discounting the vocational expert's testimony pertaining to the job of vegetable inspector. The only description of the job was given by Mrs. Grable, and it did not indicate whether two hands were required, or discuss the amount of motion involved, the degree of hand dexterity required, or the speed at which vegetables had to be inspected. The plaintiff's description by itself was too brief to provide the basis for an in-

formed opinion, and it was not developed in any way by the questions of the ALJ or her lawyer. In addition, the vocational expert failed to consider the effect which arthritis or psychological difficulties would have on the plaintiff's ability to return to the job of vegetable inspector.

2. In support of the Secretary's decision, the Government cites *Robinson v. Celebrezze*, 326 F.2d 840 (5th Cir. 1964). In that case, the court, in a per curiam opinion, denied relief to an individual who had his right arm amputated and could not be fitted with an artificial limb, citing cases stating that a man with only one arm or leg can nevertheless engage in many gainful occupations. *Robinson* appears to be inconsistent with the law of the Second Circuit, which demands that disability determinations be made on a case-by-case basis and that negative decisions be based on more than mere theoretical ability to engage in substantial gainful activity. *Ber v. Celebrezze*, 332 F.2d 293 (2d Cir. 1964); *see also, Thompson v. Mathews*, 561 F.2d 1294 (8th Cir. 1977).

raised a serious question as to her psychological condition. Although it did not express an opinion on the severity of her psychological difficulty, its probable duration, or her prospects for rehabilitation, the report nevertheless represented competent evidence of mental disability. Dr. Amato was the only psychiatrist who examined Mrs. Grable, and his opinion was not contradicted or questioned by any other expert. Although Dr. Reading stated that there was no condition, other than obesity, significant to her recovery, Dr. Reading was a plastic surgeon and was not concerned with or giving his opinion on Mrs. Grable's psychological condition. Although the ALJ may have been justified in rejecting her claims of severe arthritic pain, the ALJ was not free to disregard Dr. Amato's opinion in the absence of any conflicting evidence.

Since the burden had shifted to the Secretary, it was the ALJ's responsibility to obtain any further evidence on Mrs. Grable's mental condition that he felt was necessary. Under federal regulations, the ALJ has the power to subpoena witnesses or documents and to order an independent medical examination by a physician designated by the Social Security Administration. 20 C.F.R. §§ 404.926, 404.1527. He also can adjourn or reopen the hearing for the receipt of additional evidence. *Id.* § 404.927. Since the ALJ in this case apparently questioned Dr. Amato's opinion, he should have exercised one of these means of obtaining additional information rather than rejecting the report outright.

Reversal of the Secretary's decision is appropriate where the applicant's entitlement is clear from the record and where a remand for a new hearing would simply delay receipt of benefits. *Gold v. Secretary of HEW*, 463 F.2d 38, 44 (2d Cir. 1972); *Nasser v. Secretary of HEW*, 388 F.Supp. 58, 64 (E.D.N.Y.1975). This case meets these conditions. The plaintiff clearly established that the loss of her right hand precluded her from performing any of her former jobs, shifting the burden of proof to the Secretary. The only evidence in the record that Mrs. Grable could perform other substantial gainful employment is the testimony of the vocational expert. When read in its entirety, however, the expert's testimony failed to establish the existence of any tangible or reasonable employment opportunities for an individual with Mrs. Grable's impairments. A remand for a second disability hearing would merely cause unnecessary expense and delay.

This is not to say that there will not be some time in the future when Mrs. Grable adjusts to her prosthesis and is better able to use her left hand, and as a result becomes able to engage in substantial gainful activity. Until that time, however, she is disabled within the meaning of the Social Security Act and is entitled to disability benefits.

Accordingly, the Secretary's decision is reversed and the case is remanded to the Secretary to establish Mrs. Grable's period of disability and benefit entitlement.

So ordered.