Angel CRESPO, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of
Health, Education and Welfare,
Defendant.

No. 79 Civ. 3265.

United States District Court,
S. D. New York.

Feb. 8, 1980.

Angel Crespo, pro se.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for defendant by Edward G. Williams, Asst. U. S. Atty., New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiff, proceeding *pro se*, has brought this action pursuant to section 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health, Education and Welfare ("the Secretary") which denied plaintiff's application for a period of disability and for disability insurance benefits under sections 216(i) and 223(d)(1) of the Act, as amended, 42 U.S.C. §§ 416(i) and 423(d)(1). Defendant has moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings affirming the Secretary's decision and dismissing the complaint. As matters outside the pleadings have been presented, specifically the transcript of the record relating to plaintiff's application ("Tr."), we treat this motion as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For reasons set forth in this opinion, defendant's motion is denied, and on our own motion we grant summary judgment for plaintiff.

### Background

Plaintiff is a thirty-six year old native of Puerto Rico who came to the United States at the age of thirteen. He has a second grade education, and only a limited knowledge of the English language. He presently lives in the Bronx, New York, together with his wife (or common law wife) and three children. Since the age of fourteen he has worked at various unskilled jobs which included being a material handler for a printer, a cleaner-polisher for an appliances manufacturer, and a handyman in a tile factory. He was last employed as a porter and handyman until October 16,

1975, when he fell and was injured while on the job.

As the result of that accident, according to Henry Fleck, M.D., a physician who examined him approximately one year later, plaintiff contracted an irreversible impairment of his left hand which has rendered it permanently "useless as a working tool." (Tr. 126) In addition, plaintiff complains of other severe physical and psychological infirmities which he claims were caused by the accident: He alleges that he has difficulties walking, and that he suffers from back pains and a nervous condition.

On December 22, 1976, plaintiff underwent a psychiatric examination by Hugo M. Morales, M.D., who diagnosed "Anxiety Disorders." According to Dr. Morales, plaintiff's "major disabling factor seems to be related to his physical condition plus some anxiety manifestations, feelings or restlessness, inadequacy, and frustration." He concluded that if plaintiff's "physical condition does not improve in the near future, it is quite possible that a more definite neurotic condition could be developed, complicating the outcome of the case." (Tr. 141)

Subsequently in a report dated March 2, 1978, another psychiatrist, Gerardo P. Gonzalez, M.D., who had treated plaintiff for a prolonged period of time beginning November 1, 1977, diagnosed his condition as "Depressive Neurosis," stating: "It is my opinion that the patient's physical disability has been a major factor in precipitating his present mental status, complicated with serious drinking habit to which he resorts at times to compensate his inadequacy and frustration." (Tr. 128) More recently, in a report dated January 11, 1979, Dr. Gonzalez wrote (Tr. 143):

"On March 2, 1978 I sent you a report of [plaintiff's] history, mental status diagnosis and my opinion about patient's disability.

"Subsequently the patient continued attending to [sic] my office for his treatment regularly. Presently he is obsessively preoccupied about his inability to be engaged in a substantial gainful job owe [sic] to his physical disability, being unable to provide for his family adequately.

"This persistent external stress maintains and reinforces patient's depression and frustration and a possible deterioration of the patient's mental status leading to an overt psychosis and frank suicidal attempts are foreseen. For these reasons he is in need of a continued psychiatric treatment for an undetermined period of time."

### The Administrative Hearing

This is plaintiff's second application for disability insurance benefits under the Social Security Act. A prior application was denied on July 14, 1977, by the Administrative Law Judge ("ALJ"), and this decision was affirmed by Judge Conner of this District on October 13, 1978. *Crespo v. Department of Health, Education and Welfare* (S.D.N.Y.1978) 77 Civ. 4963.

Plaintiff requested a hearing on his second application, and one was held on January 15, 1979, before the ALJ. At this hearing, plaintiff, who was then represented by counsel, amended his application to reflect an onset date of July 15, 1977, the day after the ALJ's denial of the original application. (Tr. 31) Plaintiff testified about his background, his physical and mental condition, and his inability to work, stating, among other things, that: His injured hand was causing him severe pain (Tr. 41); he felt humiliated and rejected by his friends as the result of his condition (Tr. 40–41); he had become excitable and forgetful (Tr. 37); and he had to take pills prescribed by Dr. Gonzalez for his pain and nerves, and to help him sleep (Tr. 37, 42, 44).

The only other witness at the hearing was Arthur I. Bierman, a vocational expert and director of the Bureau of Vocational Rehabilitation. He testified that: He had made studies of the vocational potentialities of individuals with various type of impairments, including the combination of physical and psychological impairments from which plaintiff claimed to be suffering (Tr. 57); plaintiff would not be able to resume

his prior work activity (Tr. 59); and if plaintiff had all the limitations, restrictions and pain that he had claimed to have in the course of his testimony, he would not be able to undertake any light or sedentary work activity (Tr. 59). The ALJ then asked the following question (Tr. 60):

"Mr. Bierman, *I ask you to put aside now for the purposes of my question or hypothetical question, any consideration of the mental impairment,* and just limit your attention on—on his physical disability or physical impairment referable to his back, left arm and left hand and wrist.

"First of all, I'd like to ask you, are there any jobs which a person can perform in the light or sedentary field which would require the use of only one upper limb, in other words, one arm?" (emphasis supplied)

Mr. Bierman responded that such jobs indeed existed, and that thousands were available in the New York metropolitan region. He referred to occupations such as sorting, operating staple machines, and others "that would fit a one-armed individual in a broad range of factory type settings . . . ." (Tr. 61)

On February 12, 1979, "[a]fter careful consideration of the entire record," the ALJ denied the application, finding that plaintiff was not disabled within the meaning of the Act and thus not entitled to a period of disability or disability insurance benefits. The ALJ determined that even though Dr. Gonzalez in his report of January 11, 1979, had stated that deterioration of the patient's mental status might lead to an overt psychosis and suicidal attempts, "it can be inferred that such a psychosis does not presently exist, and the possibility that one may result in the future has little, if any, probative value." He also pointed out that plaintiff "goes shopping when the elevator in the apartment building is working and buys small items. He also spends some time in the park in front of his house and walks a little bit. He is able to take a bus to his doctor's office by himself." (Tr. 11) The ALJ concluded that:

"The preponderance of the existing evidence shows that the claimant's inability to use his left arm does not prevent him from engaging in sedentary work. Moreover, even considering the combination of his impairments, including his psychiatric problems, I find his functional capacities sufficient to permit him to perform sedentary work on a sustained basis. Thus, he cannot be found entitled to disability insurance benefits."

Specifically, the ALJ found that although plaintiff was unable to perform the type of work in which he had been engaged prior to his accident, he "has the residual functional capacity to perform simple work requiring the use of only one hand in an area where contact with others will be minimal", and that he "is able to perform the jobs listed by the vocational expert, all of which exist in significant numbers in the region where he lives." [1]

1. The ALJ made the following findings (Tr. 11-12):

"1. The claimant met the special earnings requirement of the Act on July 15, 1977, and continues to meet them through the date of this decision.

"2. Medical evidence establishes that the claimant has an impairment which prevents him from using his left arm. However, he is able to use his right hand and arm and thereby perform jobs that require the use of only a single arm.

"3. The claimant suffers from a depressive disorder. However, he is able to perform simple tasks where contact with others is minimal.

"4. The claimant's past work has consisted of material handler, cleaner polisher, and porter.

"5. The claimant is unable to perform his above former jobs.

"6. The claimant has the residual functional capacity to perform simple work requiring the use of only one hand in an area where contact with others will be minimal.

"7. The claimant is 35 years old.

"8. The claimant has a second grade education.

"9. The claimant is able to understand and communicate in the English language.

"10. The claimant is able to perform the jobs listed by the vocational expert, all of which exist in significant numbers in the region where he lives.

On May 3, 1979, the Appeals Council affirmed the ALJ's determination, and it thus became the final decision of the Secretary. Seven weeks later, on June 21, plaintiff commenced the present action.

## Discussion

Pursuant to section 223 of the Act ("section 223"), as amended, 42 U.S.C. § 423, persons meeting the statute's requirements for "disability" are entitled to receive disability insurance benefits. In relevant part, section 223(d) provides:

"(1) The term "disability" means—

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . ..

"(2) For purposes of paragraph (1)(A)—

"(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. . . .

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

The mere fact that plaintiff's infirmity includes "a personality disorder" as well as physical impairment "should not bar his claim." *Flam v. Califano* (E.D.N.Y.1979) 469 F.Supp. 793, 795. The pertinent regulation promulgated by the Secretary, 20 C.F.R. § 404.1504(a)(2) (1979), provides that "[m]edical considerations which justify a finding that an individual is under a disability are those that bring an individual's impairment(s) under the listing in Appendix 1 of this subpart . . . ." Among the impairments included in this listing are various mental disorders, including "*Neurotic disorders*"[2] and "*Other functional nonpsychotic disorders.*"[3] 20 C.F.R. § 12.-

---

"11. The claimant was not prevented from engaging in substantial gainful activity for any continuous period beginning on or before the date of this decision which has lasted or could be expected to last for 12 months. "12. The claimant was not under a disability as defined in the Social Security Act as amended at any time from July 15, 1977, until the date of this decision."

2. 20 C.F.R. § 12.00(B)(3)(b) of Appendix 1 to Subpart P, at 376 (1979), reads as follows: "*Neurotic disorders* (e. g., anxiety, depressive, hysterical, obsessive-compulsive, and phobic neuroses). In these conditions there are no gross falsifications of reality such as observed in the psychoses in the form of hallucinations or delusions. Neuroses are characterized by reactions to deep-seated conflicts and are classified by the defense mechanisms the individual employs to stave off the threat of emotional decompensation (e. g., anxiety, depression, conversion, obses-

sive-compulsive, or phobic mechanisms). Anxiety or depression occurring in connection with overwhelming external situations (i. e., situational reactions) are self-limited and the symptoms usually recede when the situational stress diminishes."

3. 20 C.F.R. § 12.00(B)(3)(c) of Appendix 1 to Subpart P, at 376 (1979), reads as follows: "*Other functional nonpsychotic disorders*, including paranoid, cyclothymic, schizoid, explosive, obsessive-compulsive, hysterical, asthenic, antisocial, passive-aggressive, and inadequate personality; sexual deviation; alcohol addiction and drug addiction. These disorders are characterized by deeply ingrained maladaptive patterns of behavior, generally of long duration. Unlike neurotic disorders, conflict in these cases is not primarily within the individual but between the individual and his environment. In many of these conditions, the patient may experience little anxiety and little or no sense of distress,

00(B)(3)(b) and (c) of Appendix 1 to Subpart P, at 376 (1979).

In a recent decision, *Bastien v. Califano* (2d Cir. 1978) 572 F.2d 908, the Court of Appeals for this Circuit reiterated the guidelines to be used by a federal court in reviewing a determination by the Secretary of Health, Education and Welfare that a claimant is not entitled to disability benefits under the Social Security Act. In reversing the district court's affirmance of a denial of such benefits, the Court observed (at 912):

"It is the function of this court not to make a *de novo* determination but to decide whether the Secretary's finding is supported by substantial evidence. 42 U.S.C. § 405(g); *Gold v. Sec'y of H. E. W.*, 463 F.2d 38 (2d Cir. 1972). Substantial evidence means more than a mere scintilla, and is defined as such relevant evidence as a reasonable man might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience. *Gold v. Sec'y of H.E.W., supra.* In such considerations el-

igibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.' *Id.* at 41, quoting from *Haberman v. Finch*, 418 F.2d 664, 667 (2d Cir. 1969)."

See also *Cutler v. Weinberger* (2d Cir. 1975) 516 F.2d 1282, 1285; *Brinker v. Weinberger* (8th Cir. 1975) 522 F.2d 13; *DePaepe v. Richardson* (5th Cir. 1972) 464 F.2d 92.

■ In reviewing the Secretary's denial of plaintiff's application for a period of disability and for disability insurance benefits, we have examined the record with particular scrutiny "because we are mindful that in a case in which the claimant is handicapped by lack of counsel, ill health, and inability to speak English well, the courts have a duty to make a 'searching investigation' of the record." *Gold v. Secretary of Health, Education and Welfare* (2d Cir. 1972) 463 F.2d 38, 43.

■ It is well established that an applicant for disability insurance benefits bears the burden of proving his disability as well as the ultimate burden of persuasion. *Gold v. Secretary of Health, Education and Welfare, supra,* 463 F.2d at 41; *Franklin v. Secretary of Health, Education and Welfare* (2d Cir. 1968) 393 F.2d 640, 642; *Kerner v. Flemming* (2d Cir. 1960) 283 F.2d 916, 922.

except when anxiety and distress are consequences of maladaptive behavior."

"Functional nonpsychotic disorders" are further defined as follows in 20 C.F.R. § 12.04 of Appendix 1 to Subpart P, at 377 (1979):

"*Functional nonpsychotic disorders* (psychophysiologic, neurotic, and personality disorders; addictive dependence on alcohol or drugs). With both A and B:

A. Manifested persistence of one or more of the following clinical signs:

1. Demonstrable and persistent structural changes mediated through psychophysiological channels (e. g., duodenal ulcer); or

2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

3. Persistent depressive affect with insomnia, loss of weight, and suicidal preoccupation; or

4. Persistent phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; or

5. Persistent compulsive, ritualistic behavior; or

6. Persistent functional disturbance of vision, speech, hearing, or use of a limb with demonstrable structural or trophic changes; or

7. Persistent, deeply ingrained, maladaptive patterns of behavior manifested by either;

a. Seclusiveness or autistic thinking; or

b. Pathologically inappropriate suspiciousness or hostility;

B. Resulting persistence of marked restriction of daily activities and construction of interests and deterioration in personal habits and seriously impaired ability to relate to other people."

■ However, although the question has not squarely been decided in this Circuit, virtually every other Circuit, as well as some district courts within this Circuit, have explicitly adopted the cognate rule that once such an applicant has established his inability to continue in his former type of employment, "the burden shift[s] to the Secretary to show that there is available some other kind of 'substantial gainful employment' appellant is able to perform." *DePaepe v. Richardson* (5th Cir.) *supra*, 464 F.2d at 100–101. See also *Rossi v. Califano* (3d Cir. 1979) 602 F.2d 55, 57; *Smith v. Califano* (4th Cir. 1979) 592 F.2d 1235, 1236; *Smith v. Secretary of Health, Education and Welfare* (7th Cir. 1978) 587 F.2d 857, 861; *O'Banner v. Secretary of Health, Education and Welfare* (6th Cir. 1978) 587 F.2d 321, 322; *Thompson v. Mathews* (8th Cir. 1977) 561 F.2d 1294, 1296; *Hernandez v. Weinberger* (1st Cir. 1974) 493 F.2d 1120, 1122–23; *Keating v. Secretary of Health, Education and Welfare* (10th Cir. 1972) 468 F.2d 788, 790–91; *Meneses v. Secretary of Health, Education and Welfare* (D.C.Cir. 1971) 143 U.S.App.D.C. 81, 84–85, 442 F.2d 803, 806–807; *Rosin v. Secretary of Health, Education and Welfare* (9th Cir. 1967) 379 F.2d 189, 195; *Flores v. Department of Health, Education and Welfare* (S.D.N.Y. 1978) 465 F.Supp. 317, 320; *Phillips v. Department of Health, Education and Welfare* (S.D.N.Y.1978) 453 F.Supp. 1047, 1051; *McMillen v. Califano* (N.D.N.Y.1978) 443 F.Supp. 1362, 1366; *Grable v. Secretary of Health, Education and Welfare* (W.D.N.Y. 1977) 442 F.Supp. 465, 469; *Maldonado v. Mathews* (E.D.N.Y.1976) 424 F.Supp. 301, 305; *Kenny v. Weinberger* (E.D.N.Y.1976) 417 F.Supp. 393, 398; *Robinson v. Richardson* (E.D.N.Y.1973) 360 F.Supp. 243, 248–49. But see *Chavies v. Finch* (9th Cir. 1971) 443 F.2d 356, 357, questioning to some extent the rule set forth in *Rosin v. Secretary of Health, Education and Welfare, supra*. Furthermore, we note that in *Kerner v. Flemming, supra*, 283 F.2d at 922, the Court of Appeals for this Circuit intimated that it would favor such a shifting of the burden of proof. We believe that this rule of law is sound and would be adopted by the Court

of Appeals for this Circuit if the question were squarely presented. We consequently conclude that in the case before us the Secretary has failed to sustain his burden: There is no evidence whatsoever in the record that plaintiff is capable of performing any substantial gainful work.

In *Kerner v. Flemming, supra*, 283 F.2d at 921, the Court (per Friendly, J.) held that a determination whether a claimant could engage in substantial and gainful activity "requires resolution of two issues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." See also *Dressel v. Califano* (8th Cir. 1977) 558 F.2d 504, 507.

■ It is true that in 1968 Congress amended section 223 by enacting subsection (d)(2)(A), making it irrelevant in determining an applicant's disability "whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." However, it remains incumbent on the Secretary to establish the existence of some type of "substantial gainful activity" within the meaning of section 223 which a claimant can realistically be expected to perform before he may deny such a claimant disability insurance benefits. See *Hernandez v. Weinberger, supra*, 493 F.2d at 1122. "The Secretary need not show that the claimant would actually be hired. But he must show that there are jobs in the national economy that the claimant can do." *Meneses v. Secretary of Health, Education and Welfare, supra*, 143 U.S.App.D.C. at 84, 442 F.2d at 806. "The test is whether a particular job is realistically within the physical and mental capabilities of the claimant." *Timmerman v. Weinberger* (8th Cir. 1975) 510 F.2d 439, 442. See also *Grable v. Secretary of Health, Education and Welfare, supra*, 442 F.Supp. at 469; *Maldonado v. Mathews, supra*, 424 F.Supp. at 305; *Thomas v. Richardson* (S.D.N.Y.1974) 371 F.Supp. 362, 364.

Section 205(g) of the Act, 42 U.S.C. § 405(g) empowers us "to enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." However, the statute requires that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." In the case before us, we find that the Secretary's decision is unsupported by "substantial"—or indeed any—evidence. On the contrary, it is clear that the ALJ ignored relevant and persuasive evidence to the effect that plaintiff is, in fact, disabled within the meaning of section 223.

■ An applicant for disability insurance benefits satisfies his initial burden of showing that he is unable to return to his previous employment when his claim is substantiated by medical evidence. See *Rossi v. Califano, supra,* 602 F.2d at 57; *Hephner v. Mathews* (6th Cir. 1978) 574 F.2d 359, 361; *Lewis v. Weinberger* (4th Cir. 1976) 541 F.2d 417, 420. In the present case, plaintiff has made such a showing. The ALJ specifically found that he was unable to perform his former jobs.[4] Nevertheless, the ALJ denied plaintiff's application on the ground that his functional capacities were "sufficient to permit him to perform sedentary work on a sustained basis." In making this determination, the ALJ rejected plaintiff's claim that his psychological impairment prevented him from engaging in any kind of work.

■ We find that there exists no evidence in the record to refute Dr. Gonzalez's expert psychiatric opinion that plaintiff is suffering from "Depressive Neurosis". (Tr. 128) The ALJ is not entitled to reject out of hand the validity of such a diagnosis. "The expert opinions of a treating physician as to the existence of a disability are binding on the factfinder unless contradicted by substantial evidence to the contrary." *Bastien v. Califano, supra,* 572 F.2d at 912. See also *Gold v. Secretary of Health, Education and Welfare, supra,* 463 F.2d at 42; *Lewis v. Weinberger, supra,* 541 F.2d at 420–21.

■ While it is true that neither Dr. Gonzalez nor Dr. Morales specifically stated that plaintiff was incapable of doing any work, such a conclusion can be inferred from their reports, especially when these are considered together with the expert opinion of the vocational expert, Mr. Bierman, that an individual suffering from the combination of physical and psychological impairments from which plaintiff claimed to be suffering would not be able to perform even light or sedentary work. (Tr. 59) The absence of conclusive evidence of the extent of plaintiff's psychological impairment is not dispositive. "A physical or mental impairment 'does not cease to exist merely because it is difficult of proof.'" *Cutler v. Weinberger, supra,* 516 F.2d at 1287, quoting *Celebrezze v. Warren* (10th Cir. 1964) 339 F.2d 833, 838.

After a careful review of the record, we have been unable to find any medical or other evidence regarding the combined effects of plaintiff's physical and psychological impairments upon which the ALJ could possibly have based his determination. It is clear, therefore, that he failed to give proper consideration to the effect upon plaintiff of these co-existent physical and psychological impairments. See *Cutler v. Weinberger, supra,* 516 F.2d at 1285; *Gold v. Secretary of Health, Education and Welfare, supra,* 463 F.2d at 42; *Dressel v. Califano, supra,* 558 F.2d at 507–509.

There can be no question that Mr. Bierman's response to the ALJ's hypothetical question in which he was asked "to put aside . . . any consideration of [plaintiff's] mental impairment" (Tr. 60–61) is totally meaningless in light of the obvious fact that plaintiff does suffer from such an impairment. See *Thompson v. Mathews, supra,* 561 F.2d at 1296; *Brinker v. Weinberger* (8th Cir. 1975) 522 F.2d 13, 17–19; *Myers v. Weinberger* (6th Cir. 1975) 514 F.2d 293, 294; *Grable v. Secretary of Health, Education and Welfare, supra,* 442 F.Supp. at 470; *Maldonado v. Mathews, supra,* 424 F.Supp. at 305.

---

4. Finding # 5. See n. 1, *supra.*

■ It follows, therefore, that there is no expert testimony whatsoever in the record to support the ALJ's conclusion that plaintiff "is able to perform the jobs listed by the vocational expert . . . ." [5] On the contrary, as we have already noted, when Mr. Bierman was asked whether plaintiff would be able to undertake even light or sedentary work if he had all the limitations, restrictions and pain that he claimed to have, he categorically replied that plaintiff would be unable to do so. There being no evidence to indicate that plaintiff might not be suffering from a mental impairment, the Secretary has failed to meet his burden of proof, and his decision cannot stand. See *Thompson v. Mathews, supra,* 561 F.2d at 1296.

■ In making the ultimate finding that plaintiff "has the residual functional capacity to perform simple work requiring the use of only one hand",[6] the ALJ may well have relied at least in part on his observations that plaintiff was not totally disabled, *i. e.,* that he was able on occasion to go "shopping" for "small items", spent some time outdoors, and could take a bus to his doctor's office "by himself". Any such reliance would be unwarranted. "To receive benefits under the Social Security Act, one need not be completely helpless or unable to function . . . ." *Gold v. Secretary of Health, Education and Welfare, supra,* 463 F.2d at 41 n. 6. "It is clear that the claimant need not be a total 'basket case' before the courts find that there is an inability to engage in substantial gainful activity." *Timmerman v. Weinberger, supra,* 510 F.2d at 442. "A finding of a capacity to do light work does not constitute evidence that a person can engage in substantial gainful activity, nor is such a finding sufficient to rebut a prima facie case of disability." *Hephner v. Mathews, supra,* 574 F.2d at 362. See also *Smith v. Califano, supra,* 592 F.2d at 1237; *Yawitz v. Weinberger* (8th

Cir. 1974) 498 F.2d 956, 960; *Robinson v. Richardson, supra,* 360 F.Supp. at 251. Thus it may not be inferred from plaintiff's minimal activities that he is capable of engaging in any type of "substantial gainful activity".

■ If there were serious uncertainties as to plaintiff's condition, we would remand to the Secretary for the taking of more evidence. For instance, plaintiff could be interrogated at greater length, and the psychiatrists Morales and Gonzalez could be called to testify. "But as we feel that the bulk of their testimony would only be amplification of the facts already in the record, . . . we see no need to reopen the case for more evidence." *Gold v. Secretary of Health, Education and Welfare, supra,* 463 F.2d at 44. See also *Grable v. Secretary of Health, Education and Welfare, supra,* 442 F.Supp. at 471. Specifically, we find in the record persuasive evidence that plaintiff is suffering from "functional nonpsychotic disorders", if not "neurotic disorders", as these terms are defined in 20 C.F.R. §§ 12.00(B)(3)(b), (c), and 12.04 of Appendix 1 to Subpart P. at 376–77 (1979);[7] that this psychological condition, together with his physical impairment, make it impossible for him to engage in any substantial gainful activity; and that he is consequently disabled within the meaning of section 223 and entitled to the establishment of a period of disability and to disability insurance benefits.

Defendant's motion for summary judgment is denied. Although plaintiff has not made a cross-motion for summary judgment, such relief may, and is, granted on our own motion. See *Lowenschuss v. Kane* (2d Cir. 1975) 520 F.2d 255, 261; *Local 33, International Hod Carriers Union v. Mason Tenders District Council* (2d Cir. 1961) 291 F.2d 496, 505; *Brill v. Celebrezze* (E.D.N.Y. 1964) 232 F.Supp. 296, 309–310. The Secretary is directed to establish plaintiff's peri-

---

5. Finding # 10. See n. 1, *supra.*

6. Finding # 6. See n. 1, *supra.*

7. See notes 2 and 3, *supra.* We make our ruling exclusively on the pleadings and the

transcript of the hearing before the ALJ. However, having observed plaintiff at a conference and a hearing before us, we are unable to comprehend how the ALJ could possibly have doubted his mental disability.

od of disability and to award him the appropriate disability insurance benefits.

So ordered.