Betty S. COLEMAN, Appellant,

v.

Caspar W. WEINBERGER, Secretary of Health, Education, and Welfare of the United States, Appellee.

No. 75–1760.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1976.

Decided April 19, 1976.

James B. Craven, III, Durham, N. C. (Everett, Everett, Creech & Craven, Durham, N. C., on brief), for appellant.

Russell A. Eliason, Asst. U. S. Atty., Raleigh, N. C. (N. Carlton Tilley, Jr., U. S. Atty., Greensboro, N. C. and Benjamin H. White, Jr., Asst. U. S. Atty., Greensboro, N. C., on brief), for appellee.

Before WINTER, BUTZNER and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

Denied a disability benefit under the Social Security Act by the Secretary of HEW, Betty Coleman appeals from a judgment of the district court holding that the denial was supported by substantial evidence. Because we think that the only substantial evidence demonstrates that she was disabled before the expiration of her insured status, we reverse and remand with directions to return the case to the Secretary to grant the claimed benefit.

### I.

Mrs. Coleman, who is now 46 years old, started working at age 16 as a weaver in a cotton mill. She worked as a weaver for two years, and in 1955, after having not worked for some years, she became a "hand catcher" for Liggett & Myers Tobacco Company. She has an eighth-grade education.

According to her testimony, Mrs. Coleman ceased work as a hand catcher on February 22, 1967, when she "began to get numb all over, and . . . had stomach cramps . . . ." She went to her doctor, Dr. Boyd Harden, who treated her for anemia. She tried to return to work on a regular basis, but she would "begin to get numb and dizzy . . . ," and so she concluded not to return until she was able to do a full day's work. She was put in the hospital in March, 1967, and from then on she received medication for thyroid deficiency and anemia. She recounted subsequent hospitalizations and treatment extending to the date of the hearing before the administrative law judge. She was retired by her employer on a disability pension in 1970. Beginning in April, 1973, she began receiving psychiatric treatment for depressive neurosis. Because of rapid heartbeat, persistent weakness and faintness, Mrs. Coleman testified that she could not return to work and that her only physical activity was the performance of limited household duties.

Mrs. Coleman's medical evidence, succinctly stated, shows a consistent pattern of thyroid disease and anemia complicated later by psychiatric illness. When hospitalized in March, 1967, she was diagnosed as having anemia normocytic due to hypothyroidism. When hospitalized in June, 1967, the diagnosis was toxic goiter, and she was advised to avoid any strenuous activity. In July, 1967, a physician who examined her gave as his impression probable mild hyperthyroidism—Graves' disease—and chronic anxiety reaction. Her treating physician in March, 1968, stated that she was unable to work due to anemia and thyroid dysfunction. When examined in a hospital clinic in October, 1968, the diagnosis was mild anemia. Another physician advised her—again in October, 1968—that she had a marked lack of thyroid function, which could account for anemia. He prescribed thyroid tablets and said that she would have to take them daily for the rest of her life. Another physician said in November, 1968, that Mrs. Coleman had an underactive thyroid gland and was unable to work.

Mrs. Coleman's treating physician in February, 1969, and March, 1970, said that Mrs. Coleman was unable to work due to secondary anemia. He said that the anemia had existed since October, 1958, and that there had been a thyroid problem since February, 1967; and as a result she was totally unable to participate in gainful employment.

Mrs. Coleman was hospitalized again in August, 1972. Her final diagnosis was possible Hashimoto's disease. Additional tests

to determine her exact medical problem showed that there was no evidence that her thyroid was functioning and that thyroid replacement therapy should be continued. In connection with her August 1972 hospitalization, the hospital record states that "[p]atient has not worked for 5–6 years because she claims she is 'disabled' but also claims she does not want to go back to work."

In March, 1974, a physician at the Medical School of the University of North Carolina at Chapel Hill advised claimant's attorney that from a review of Mrs. Coleman's medical records at the hospital "I gather that the largest part of Mrs. Coleman's problem stems around her psychiatric situation which renders her incapable of carrying out any work."

Mrs. Coleman last met the special earnings requirement for a disability benefit on June 30, 1972.

## II.

As we read the record, substantial evidence would support the finding that claimant was disabled prior to June 30, 1972, from thyroid disease and anemia. Such is her testimony; all of the medical records and medical tests establish the existence of these physical problems; and the only opinion expressed—that of her treating physician—is that she is incapable of substantial gainful employment. We are in disagreement with the argument of the Secretary that the fact of disability was not proven. Based upon the record, a permissible overall finding would appear to be that Mrs. Coleman was disabled since February 22, 1967, so that she was entitled to benefits for the period beginning twelve months prior to the filing of her application therefor, 42 U.S.C. § 423(b), unless there is also substantial evidence to support a contrary finding.

We do not find substantial evidence to support a contrary finding. Claimant's statement in the August 1972 hospital record is too insubstantial for this purpose. There is no evidence that claimant would have been able to work had she wanted to. She testified how she felt and that her physical limitations made it impossible for her to work. Without an explanation of why she did not want to go back to work, the more reasonable inference from the bare statement "she does not want to go back to work" is that she had lost hope of recovery and did not think that she would be able to perform her job.

Nor do we think that the record supports the administrative law judge's determination that Mrs. Coleman's psychiatric illness supplanted her physical illness—the former occurring after the expiration of her insured status—so that she is to be denied benefits on the theory that her disability, if any, is caused by a disorder which became disabling after insured status was lost. *See Henry v. Gardner,* 381 F.2d 191 (6 Cir.), cert. denied, 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487 (1967).

Certainly Mrs. Coleman has received psychiatric treatment since 1973. But the record is devoid of substantial evidence to permit a finding that only Mrs. Coleman's psychiatric illness disables her and that she is no longer disabled from thyroid disease and anemia. The March 1974 written statement of the physician from U.N.C. fails to prove the fact. First, it is at most a statement from a physician who has only read the records but who has neither seen the patient nor treated her. The uncertainty of "I gather" is manifest. More importantly, the same letter states that contemporaneous hospital tests show a total lack of function by Mrs. Coleman's thyroid. Thus, read in its entirety, the statement does not constitute substantial evidence that Mrs. Coleman's present disability stems solely from post-June 30, 1972, psychiatric illness. It cannot be read to constitute an opinion that "but for" her present psychiatric illness, she could engage in substantial gainful employment, that her thyroid disorder had been righted, or that it had sufficiently ameliorated as to be no longer disabling.

## III.

Since we find lacking substantial evidence to deny disability benefits, but sub-

stantial evidence to grant them, we reverse and remand with directions to return the case to the Secretary for an award of the benefits claimed.

REVERSED AND REMANDED.