**Hershel D. LEE, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 79–945.**

United States District Court,
D. South Carolina, Spartanburg Division.

July 8, 1980.

George H. Thomason, Spartanburg, S. C., for plaintiff.

James D. McCoy, III, Asst. U. S. Atty., Greenville, S. C., for defendant.

## ORDER

HAWKINS, District Judge.

Plaintiff, Hershel D. Lee, Jr., brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Secretary of Health, Education and Welfare denying his claim for disability insurance benefits and supplemental security income. The definition of disability for supplemental security income is the same as that for social security disability insurance cases, and the standard of review is the same for both programs. Therefore, social security disability insurance cases will be cited by analogy. *See, Gilchrist v. Weinberger*, 399 F.Supp. 525 (N.D.Ala.1975).

█ Plaintiff filed concurrent applications for disability and supplemental security income benefits on April 12, 1977, alleging disability as of July 7, 1976, due to bronchitis and emphysema. These applications were denied both initially and on reconsideration, whereupon plaintiff filed his request for a hearing. The first hearing on this application for benefits was conducted on March 28, 1978, resulting in an unfavorable decision issued on June 20, 1978. Upon request for review by plaintiff's attorney, the Appeals Council vacated the hearing decision and remanded this case on November 17, 1978, for further proceedings. The order of remand instructed the administrative law judge to obtain consultative pulmonary examinations and physical capacity evaluations. In addition, the order also instructed the ALJ to obtain any other evidence, including vocational evidence, if needed, to determine whether the claimant would have been able to return to his previous work or any other substantial gainful activity. A second hearing was held on February 15, 1979, resulting again in a denial of benefits in a decision dated April 9, 1979. A request for an appeal from the second hearing decision was filed on April 16, 1979. The ALJ's decision became the final decision of the Secretary when it was approved by the Appeals Council on May 10, 1979. This court is bound by the findings of the Secretary if they are supported by substantial evidence. *Jolley v. Weinberger*, 537 F.2d 1179 (4th Cir. 1976); 42 U.S.C. § 405(g).

Plaintiff is a forty-six year old functional illiterate who has worked primarily as a paint sprayer but who has also held jobs as a yarn loader, drill press operator, and garbage collector. Plaintiff's primary medical complaints consist of chronic obstructive pulmonary disease requiring the use of medication, asthma, emphysema, and recurrent bronchitis. He meets the special earnings requirements of the Act through September 30, 1981.

The medical evidence submitted prior to plaintiff's first hearing commences with a medical report by Dr. John W. A. Woody, a general practitioner and specialist in internal medicine, covering a period from April 31, 1949, through October 8, 1976. Dr. Woody furnished x-ray reports and an insurance form for disability benefits as Exhibit 7. The insurance form indicates that Dr. Woody has seen Mr. Lee on numerous occasions and has treated him for a diagnosis of pulmonary emphysema and has recommended permanent disability. Dr. Woody indicated that the plaintiff ceased to be able to do normal activity due to his disability on August 30, 1976. Dr. Woody ordered x-rays of Mr. Lee on August 8, 1976, which revealed increased bronchovascular markings, evidence of early pulmonary emphysema, but no pulmonary infiltrate. This x-ray was compared with a previous x-ray of October 29, 1973, which revealed normal findings.

The recent history of Dr. Woody's treatment of Mr. Lee indicates that on October 26, 1973, the doctor found acute upper respiratory infection with tracheobronchitis and sinusitis. By November 3, 1973, plaintiff had less cough and sputum and was considered able to work. He was also advised to stop smoking cigarettes. Mr. Lee reported nasal discharge and obstruction for one week with cough for five days on June 8, 1976. The cough was tight, spasmodic, and sometimes continued to the point of faintness and twice to syncope. This infection cleared, but on August 26,

1976, he developed another upper respiratory infection with nasal obstruction, discharge, and cough. He had episodes of syncope by spasms of coughing and was troubled by dyspnea. His cough increased in September 1976, although he had a tendency to cough and be dyspneic at work. Plaintiff was having less cough by October 8, 1976. He had stopped smoking and his lungs were clear. Dr. Woody made a diagnosis of pulmonary emphysema. (Exhibit 9).

The record indicates that plaintiff underwent a consultative examination on May 25, 1977, by Dr. Richard S. Pollitzer, a Board-certified specialist in internal medicine and cardiovascular diseases, with a practice in direct patient care. Upon physical examination, Dr. Pollitzer observed frequent coughing with dyspnea, slight tenderness over the sinuses, and moderate congestion of the nose and throat. Expiratory wheezes were noted throughout the lungs and inspiratory rales were also noted throughout. A chest x-ray revealed a low diaphragm and over-expanded lungs. A pulmonary function study was performed and interpreted by Dr. Pollitzer as showing severe obstructive disease with poor response to bronchodilators. An electrocardiogram was also performed which revealed relatively low voltage in the test which was considered to be compatible with pulmonary disease. Dr. Pollitzer gave a clinical diagnosis or impression of pulmonary disease, obstructive, chronic, with probable asthma and probable early emphysema. (Exhibit 10).

Dr. Woody furnished another medical report on November 29, 1977. Dr. Woody commented on receipt of a copy of Dr. Pollitzer's exam. Dr. Woody indicated that since that examination Mr. Lee had consulted him on June 13, 1977, because of a diffuse upper respiratory infection. When seen at that time, the patient had a cough with fever and scant white sputum. Dr. Woody observed lassitude and weakness at the time of the visit. Fine, moist rales were observed on an examination of the chest during inspiration at the left base, with no wheezes. (Exhibit 12).

Dr. J. F. Miller, a general practitioner, furnished a report to the Social Security Administration on January 9, 1978. Dr. Miller reported that for two years he had seen the patient for chronic obstructive pulmonary disease with asthma, bronchitis, and emphysema. On physical examination, Dr. Miller reported expiratory wheezes throughout both fields of the lung. Dr. Miller reported that he had treated the patient for these impairments with significant quantities of antibiotics. On January 5, 1978, Dr. Miller prepared a supplemental report stating that Hershel Lee is "totally and permanently disabled due to chronic obstructive pulmonary disease with asthma, bronchitis, and emphysema." (Exhibit 15).

This is an outline of all of the medical reports that were in the record at the time the ALJ wrote his first decision denying benefits. This evidence was specifically incorporated by reference into the second decision of the ALJ, along with the additional medical evidence which follows.

Based upon the order of remand, the plaintiff underwent a consultative internist examination by Dr. Charles H. Myers on December 21, 1978. Dr. Myers specializes in nephrology and internal medicine. The plaintiff was evaluated in light of respiratory symptoms. Upon examination, he complained of acute upper respiratory tract infection. Dr. Myers found, among other things, that the patient's nasal membranes were intact and that there was a thin nasal discharge. He had a mild deviation of the septum to the right; his oral mucosa was intact with some evidence of posterior nasal drip. There appeared to be some increase in his AP diameter and a few scattered expiratory wheezes throughout the lung fields. The plaintiff's breath sounds were decreased throughout. In addition, an immature cataract was noted in the left eye. Dr. Myers observed that the plaintiff had good strength in all extremities, and that the plaintiff was able to bend and stoop without difficulty. The plaintiff did get short of breath on walking a short distance, but he was able to walk around the office

without getting short of breath. The diagnostic impression was that of immature cataracts, probable emphysema, acute respiratory tract infection, and chronic sinusitis, with posterior nasal drip. In an attached physical capacities evaluation, Dr. Myers indicated that in an eight-hour work day plaintiff had the functional ability to sit for six hours, stand for three hours, lift up to twenty pounds occasionally, carry up to ten pounds occasionally, and use his hands for simple grasping, pushing and pulling, and fine manipulation. Plaintiff was able to use his feet for repetitive movements and was able to bend, squat, and crawl occasionally, as well as reach above shoulder level frequently. Plaintiff was stated to have a total restriction from exposure to polluted environments, automotive equipment, and extreme temperature changes. He was felt to have moderate restrictions from unprotected heights and from moving machinery. In addition, plaintiff was considered precluded from any significant walking and from carrying any weight more than eleven pounds. (Exhibit 18).

The record also includes reports of pulmonary function and blood gas studies performed at the St. Francis Community Hospital in Greenville, South Carolina, on January 10, 1979. The plaintiff was noted to have expended his best effort on the pulmonary function test. No interpretation of the pulmonary function study was provided by Dr. Myers or by the technician who performed the tests. The percentages in reduced values on vital capacity and forced expiratory volumes for one second and two seconds revealed substantial reduction in breathing capacity. More significantly, the arterial blood gas analysis also revealed significant disfunction of blood gas exchanges. (Exhibit 20).

A letter from Dr. William W. Pryor, a Board-certified specialist in internal medicine, with a subspecialty in cardiovascular diseases, dated February 22, 1979, and summarizing the plaintiff's pulmonary condition, was received into evidence subsequent to the supplemental hearing at the request of the Social Security Administration. After reviewing the medical evidence, Dr.

Pryor was of the opinion that the plaintiff's manifested symptoms were compatible with the diagnosis of obstructive lung disease. Despite a history of alleged asthma, Dr. Pryor indicated that there were no clear episodes of asthmatic attacks. Instead, he felt that there were repeated episodes of bronchitis with coughing and, on several occasions, cough syncope. He noted that during the performance of the maximum ventilatory volume (MVV) considerable step-up or evidence of air trapping is seen on the graft. The FEV curve following bronchodilators also showed evidence of airway obstruction and irregularity of the FEV curve on the graph indicates that the claimant had difficulty with coughing. Dr. Pryor was of the opinion that the values obtained indicated moderate expiratory obstructive impairment with an $FEV_1$ of 2075 cc. or only 53 percent of predicted value. He also found blood gas studies to be abnormal and concluded that the claimant did have significant obstructive lung disease. Moreover, despite episodes of coughing and fainting, Dr. Pryor was of the opinion that this patient could tolerate sedentary activity.

Subsequent to the hearing, Dr. Pryor's responses to interrogatories submitted by the plaintiff's attorney were admitted into the record. Dr. Pryor indicated that the findings from the pulmonary function studies and the blood gas studies failed to meet or equal the criteria of the Listings attached to the appendix of Regulations 4 and 16. The doctor also indicated that the blood gases revealed an abnormality of pulmonary function, however, he doubted that one could state whether the plaintiff had significant symptoms. Dr. Pryor noted that no stress testing, such as a measure of the plaintiff's capacity to exercise and the effects on the arterial blood gases were available in the record. He stated that there appeared to be no reason why the plaintiff should not be able to perform sedentary activities. In fact, he felt that the plaintiff should be encouraged to increase his activity so that he could improve his overall status. Dr. Pryor also stated that episodes

of coughing and fainting were compatible with the findings from the arterial blood gas and ventilatory studies, however, he indicated that the regularity with which cough syncope occurred was not clear from the record. Finally, he noted that if it could be documented that minimal exertion precipitated coughing which would cause the plaintiff to faint, then restrictions from the operation of motor vehicles or other moving equipment would follow. (Exhibit 25).

At the hearing, plaintiff testified concerning his physical condition. He complained of difficulty walking for any distance, shortness of breath on exertion, recurrent coughing spells, trouble sleeping, and a dry throat. Due to these difficulties, plaintiff further testified that his daily activities consist of driving a truck, "piddling" around his yard, mowing his lawn with a riding lawnmower, washing dishes, vacuuming, feeding a horse and chickens, watching TV and caring for his personal needs. Plaintiff further testified that he smokes half a pack of cigarettes a day. Finally, he stated that he weighs 200 pounds, uses a vaporizer, and takes five medications for his breathing problems.

Dr. Paul E. Biles, a vocational expert, testified at the hearing regarding the vocational aspects of the plaintiff's case. Dr. Biles was asked a hypothetical question which, in its critical part, assumed that the plaintiff had a respiratory impairment of a moderate degree. Considering all the factors in the hypothetical question, the vocational expert stated that the plaintiff retained the residual functional capacity to perform a wide range of sedentary work activities, including such work as inspector in an electrical appliance plant, electronics operation, packer in a variety of industries, bottle watcher, bench worker, watchman, and small parts assembly worker (Tr. 107–108). The vocational expert was never asked nor did he volunteer that these jobs exist in significant numbers in one or more regions of the economy. On cross-examination, in response to the hypothetical posed by plaintiff's attorney which assumed a diagnosis of moderately severe respiratory impairment with a corresponding functional impairment, Dr. Biles responded:

"I would say a condition like this moderately severe in non-medical terms would essentially limit him from competitive meaningful employment." (Tr. 109–111).

The non-medical evidence consists of testimony from the plaintiff that he loses his breath when walking and has severe coughing spells. He is physically able to do only a minimum of housework. His sleep is interfered with at night because of coughing. He limits his driving because of coughing which causes fainting spells. His normal sexual relations with his wife are no longer possible because of exhaustion. Occasionally, he will attempt to walk from his farm home to a pasture approximately two and a half blocks from his home and will become so exhausted that he will have to sit down and rest twice.

■ It is fundamental that the jurisdiction of this court is confined to a limited review of the Secretary's decision and the record made in the administrative hearing process. The determination of disability under the Social Security Act is an administrative decision, and the only question before this court is whether or not the decision of the Secretary is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is also clear that it is the function of the Secretary and not the court to resolve conflicts in the evidence and pass on the credibility of the witnesses. *Id.*

■ Of the medical evidence, the opinions of Drs. Miller, Woody and Pollitzer all concur on the total disability of the plaintiff in this case. Their opinions are based on physical examination and clinical findings. The medical evidence of non-disability is provided by Drs. Myers and Pryor, the latter of whom was a non-examining physician.

It is of interest to this court that Dr. Myers states in his physical capacities evaluation form that the plaintiff should be

moderately restricted from being around moving machinery. It is reasonable to infer that this restriction is intended to protect the plaintiff from suffering physical injury from the moving parts of machines during a coughing or fainting spell. While the difference between a moderate degree of restriction and total restriction from machinery is less than clear to this court, it only seems logical that a man who should not go near machinery during a coughing spell should never go near machinery when such coughing spells are unpredictable. In other words, for practical purposes, a moderate restriction for this plaintiff is tantamount to a total restriction. Assuming, therefore, that this plaintiff should be totally restricted from working around moving machinery, most, if not all, of the sedentary work activities listed by the vocational expert as suitable for this plaintiff, are eliminated. Basically, they involve assembly line work of some type. The vocational expert himself admitted that the plaintiff would be unable to perform the job of watchman (Tr. 108). Thus, in summary, Dr. Myers' restriction on plaintiff's activities would seem to favor plaintiff's claim of disability rather than the Secretary's position of non-disability. Finally, it is significant to note, as plaintiff's attorney has pointed out, that Dr. Myers' evaluation was completed on December 21, 1978, and that the pulmonary function studies were not available to him at the time he completed his form for the disability determination division. Those studies which occurred at St. Francis Community Hospital were performed on January 10, 1979. No interpretation of these pulmonary function studies was provided by Dr. Myers or by the technician who performed the tests.

As for the evidence provided by Dr. Pryor, it is painfully obvious that the Secretary relies heavily on the opinion of Dr. Pryor, which opinion is that of a non-examining physician. The case of *Martin v. Weinberger,* 492 F.2d 905 (4th Cir. 1974) specifically held that the opinion of a non-examining medical advisor alone could not constitute substantial evidence to support the denial of benefits in a Social Security disability application. Coincidentally, Dr. Pryor was also the non-examining physician involved in that case. *Martin* may or may not require reversal of the Secretary's decision in this case depending on how one views the medical evidence of Dr. Myers. While this court is tempted to find as a matter of fact that Dr. Pryor's medical opinion is the only evidence of non-disability in the record, such opinion is not necessary. Instead, it is the opinion of this court that the overwhelming weight of the evidence, consisting of the subjective evidence of the plaintiff and his wife, the opinion evidence of the plaintiff's examining physicians, the objective clinical facts documented, as well as the vocational background of the plaintiff, points to a finding of disability.

The Secretary erred in failing to sufficiently scrutinize the opinion testimony of Dr. Myers. It is the opinion of this court that, when given its proper weight, the testimony of Dr. Myers is at best neutral and would not serve, when combined with Dr. Pryor's testimony, to amount to substantial evidence. In short, this court finds that there is not a sound foundation for the Secretary's findings as required by the case of *Vitek v. Finch,* 438 F.2d 1157 (4th Cir. 1971). Whereas the record lacks substantial evidence to deny benefits, there is, in the opinion of this court, overwhelming evidence to grant benefits. *Coleman v. Weinberger,* 538 F.2d 1045 (4th Cir. 1976).

■ Finally, it is the opinion of this court that a remand of the instant case for a new hearing would simply delay receipt of deserved benefits, and that a reversal of the Secretary's decision is appropriate where the plaintiff's entitlement is clear from the record. *See, Grable v. Secretary of HEW,* 442 F.Supp. 465 (W.D.N.Y.1977). Accordingly, the Secretary's decision that this plaintiff is not entitled to disability insurance benefits and to supplemental security income benefits is hereby reversed. The Secretary will proceed to award benefits to this plaintiff.

AND IT IS SO ORDERED.