Susie S. BRYANT, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.

Civ. A. No. 79–1168.

United States District Court, D. South Carolina, Greenville Division.

Aug. 4, 1980.

Ernest J. Howard, Griffin & Howard, Greenville, S. C., for plaintiff.

James D. McCoy, III, Asst. U. S. Atty., Greenville, S. C., for defendant.

## ORDER

HAWKINS, District Judge.

This action for review of a final decision of the Secretary of Health and Human Services is before the court with the report and recommendation of the United States Magistrate, made in accordance with this court's order of reference and 28 U.S.C. 636(b). The court is charged with making a *de novo* determination of any portions of the Magistrate's recommendation to which specific objection is made, and it may accept, reject or modify, in whole or in part, the recommendations made by the Magistrate or recommit the matter to the Magistrate with instructions.

No exceptions to the Magistrate's report have been made by either party. In his report the Magistrate recommended that this case be remanded to the Secretary for further consideration of all of the evidence of record, including the plaintiff's subjective complaints of pain. Having reviewed the record, the applicable law, the briefs of counsel, and the recommendation of the Magistrate, the court is of the opinion that the substantial evidence of record supports the plaintiff's claim and, therefore, the decision of the Secretary denying disability benefits must be reversed. Although the United States Magistrate has recommended a remand in this instance, the court finds that this is the type of case that warrants reversal. Reversal of the Secretary's decision is appropriate where the plaintiff's entitlement is clear from the record and where a remand would simply delay receipt of deserved benefits. *See Grable v. Secretary of HEW*, 442 F.Supp. 465 (W.D. N.Y.1977). Where a record is lacking substantial evidence to deny benefits, but contains substantial evidence to grant them, reversal of the Secretary's decision is appropriate. *See Coleman v. Weinberger*, 538 F.2d 1045 (4th Cir. 1976).

The plaintiff was born on June 19, 1925, and has a high school education. Her work experience has been as a waitress, seamstress in a sewing room, and housekeeper. In the application presently before the court, Mrs. Bryant alleges inability to work as of October 27, 1971, due to chronic bronchitis and problems associated with her back, legs, and hearing.

This is Mrs. Bryant's third application for disability benefits. Her previous applications were denied for lack of insured status. The record now establishes that the plaintiff was, in fact, insured from a time prior to her alleged onset date and continued to be insured through March 31, 1972. Therefore, Mrs. Bryant must establish her "disability" on or before March 31, 1972.

The medical evidence in this record is voluminous. The plaintiff has been hospitalized at least 17 times since 1964. Since Mrs. Bryant must establish her disability as of March 31, 1972, the court will primarily focus its attention to the medical evidence prior to that date. On September 6, 1961, the plaintiff underwent a left modified mastoidectomy, which was performed by Dr. Hearn. In a report dated October 13, 1964, Dr. Hearn stated that Mrs. Bryant had perennial allergic rhinitis with intermittent left catharrhal otorrhea (of nasal origin) for the past one to two years. He further reported that she suffered impaired hearing, more in her left ear than right, and he was unable to determine if this condition would become more progressive.

The plaintiff was hospitalized from July 29, 1964, to August 12, 1964, at which time Dr. Brady performed a hemilaminectomy on her. In a report dated October 13, 1964, Dr. Vernon, the plaintiff's primary treating physician, stated that she was suffering from deafness in her left ear, frequent

headaches, pain in her leg, and a painful back following her surgery in July. Dr. Brady noted in a report dated December 15, 1967, that Mrs. Bryant was having pain associated with post-operative treatment of a plantar neuroma of the right foot. He stated that this condition resulted in 15% disability and loss of function of the right ankle and foot. Dr. Hodge, a consultative examiner who saw the plaintiff at the request of her attorney, gave the following diagnosis in a letter dated December 28, 1967: post-operative status incident to plantar neuroma involving the proper volar digital nerve of the 4th digit of the right foot, and a dorsal tunnel syndrome incident to trauma of the right foot. Dr. Hodge estimated the degree of impairment to the right foot to be approximately 25%.

Mrs. Bryant was again hospitalized from December 7, 1970, to December 9, 1970, for the treatment of (1) distal urethra stenosis, (2) sprain of left knee, (3) acute tenosynovitis, and (4) subdeltoid bursitis, right. At that time an urethrotomy distal was performed. Dr. Brady again examined the plaintiff on November 16, 1971, for pain in her right knee. In the history that she related to Dr. Brady, she stated that she had fallen on August 2, 1971, and twisted her right leg. Mrs. Bryant was hospitalized from February 2, 1972, to February 15, 1972, and Dr. Brady performed an arthrotomy on her right knee and excised the medial meniscus. Postoperatively, the plaintiff complained of pain around the patella. In a progress note dated April 24, 1972, Dr. Brady stated that Mrs. Bryant was not able to do her regular work at that time. In June 1972, Dr. Brady reported that the plaintiff had a rating of 15% disability of the right leg due to her knee problem.

Having reviewed the plaintiff's three hospitalizations prior to March 31, 1972, and all of her other medical problems as of that date, the court now addresses the remaining medical evidence of record. In November 1972, Mrs. Bryant was hospitalized for another hemilaminectomy. The following month she was again admitted to the hospital for treatment of back pain resulting from that surgery. In February/March 1974, the plaintiff was hospitalized with the final diagnosis of pericurethral caruncle; acute allergic rhinosinusitis, secondary to nicotine allergy. The plaintiff was later admitted on November 1, 1974, for a four-day duration with a diagnosis of bursitis, right shoulder; gastroenteritis, and urinary tract infection, acute.

On May 19, 1975, Mrs. Bryant was admitted to the hospital for treatment of a chronic genitourinary infection; distal urethral stenosis, and hydronephrosis, right. In December 1975, the plaintiff was again admitted for the condition of chronic cholecystitis with cholelithiasis with acute exacerbation. Two months later, in February 1976, Mrs. Bryant was again in the hospital for removal of a mass in her left upper extremity and for treatment of acute lower respiratory infection with asthma. In May 1976, the plaintiff was hospitalized with a provisional diagnosis of preinfarction syndrome. The hospital report noted that Mrs. Bryant experienced chest pain and EKG changes for five days. After her cardiac condition was stabilized, she underwent an incision of a large abscess of the left gluteal area. The plaintiff was again in the hospital in October of 1976 for treatment of bilateral bronchopneumonia with dehydration.

On May 2, 1977, the plaintiff was hospitalized with a final diagnosis of chronic cholecystitis with recurrent gallbladder colic, nausea, vomiting, and dehydration. In October 1977, Mrs. Bryant was admitted to the hospital with herniated nucleus pulposus L4, L5 with left radiculitis with intractable pain. She was treated with physical therapy and improved somewhat during her hospitalization. The plaintiff was again hospitalized in September 1978 with chronic obstructive pulmonary disease and gallbladder disease. Two months later Mrs. Bryant was back in the hospital with asthma; lower respiratory tract infection, acute; pleuritic pain, right; and intercostal myositis, acute, right. The most recent medical evidence of record is a report of hospitalization from March 7, 1979, to March 12, 1979, at which time the plaintiff had fractured ribs, left, with lower respiratory tract infection, acute with asthma.

In order to qualify for disability insurance benefits under the Social Security Act, a claimant must prove the existence of a medically determinable physical or mental impairment. 42 U.S.C. § 423(d)(1). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It is well established that pain alone can be disabling within the meaning of the Social Security Act. *Brandon v. Gardner*, 337 F.2d 488 (4th Cir. 1967); *Hunley v. Califano*, 465 F.Supp. 65 (E.D.Va. 1979). Subjective testimony of pain accompanied by clinical findings and medical diagnoses supporting the complaints of pain may give rise to a prima facie case. *Thorne v. Weinberger*, 530 F.2d 580 (4th Cir. 1976).

At the administrative hearing on April 10, 1979, Mrs. Bryant testified that she experienced swelling in her feet and pain in her knees. She also stated that the pain associated with her back surgery in 1964 continued until her second hemilaminectomy in 1972. Mrs. Bryant further testified that she stays in bed every day for one-half of the day because she is in so much pain. She does no housework other than occasionally washing dishes, and she never goes shopping or to church.

The evidence of record reveals quite clearly that the plaintiff has a history of chronic, persistent medical problems. Since 1970 she has been hospitalized every year except one. During some years, Mrs. Bryant has been in the hospital as many as three times. Her average length of stay in the hospital is 7 days. Mrs. Bryant's alleged onset date is October 27, 1971. She testified at the administrative hearing that she was injured at work on that particular date when she fell and twisted her knee. The medical records of Dr. Vernon evidence that the plaintiff visited him on August 2, 1971, and related to him that she had fallen that day at work and hurt her back. On that day he injected her with Levoprome and Phernegan for pain. From August 2, 1971, until September 23, 1971, Mrs. Bryant was injected with either Levoprome or Talwin 16 times. Levoprome is a drug which produces an analgesic effect comparable to morphine, and Talwin is also a drug administered for the relief of moderate to severe pain. *Physician's Desk Reference*, 965, 1855 (33d ed. 1979). On September 23, 1971, Dr. Vernon referred Mrs. Bryant to Dr. Jones, who treated her knee with heat, physical therapy, and injections. The plaintiff then went to Dr. Brady, who eventually operated on her knee in February 1972. Between October 1, 1971, and January 22, 1974, Dr. Vernon regularly and routinely injected Mrs. Bryant with either Talwin or Levoprome.

Although evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the administrative factfinder must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant. *Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir. 1978), citing *Thorne v. Weinberger*, 530 F.2d 580 (4th Cir. 1976). While it is a well-settled principle that the burden of proof in a social security case is on the individual claimant, *White v. Celebrezze*, 359 F.2d 138 (4th Cir. 1966), it is also well established that the administrative law judge has the responsibility of inquiring into an asserted disability claim in such a manner that will fully and fairly develop the facts. *See Cutler v. Weinberger*, 516 F.2d 1282 (2d Cir. 1975); *Sellars v. Secretary of HEW*, 458 F.2d 984 (8th Cir. 1972); *Snyder v. Ribicoff*, 307 F.2d 518 (4th Cir. 1962); *Smith v. Weinberger*, 394 F.Supp. 1002 (D.Md.1975).

In discussing Mrs. Bryant's subjective complaints of pain, the administrative law judge stated in his decision:

The undersigned has considered the claimant's allegations of pain. However, there is no objective medical evidence that would substantiate the existence of pain of such frequency and severity as to be "disabling" on or before March 31, 1972. (R.12).

It is evident from the above statement by the administrative law judge that he applied an improper legal standard to his consideration of the plaintiff's subjective complaints of pain. Such complaints must be carefully considered even though they are not corroborated by objective examinations and tests. However, in the case presently before the court, the plaintiff's allegations of pain are completely supported by objective medical evidence.

Prior to 1971, Mrs. Bryant had undergone four surgical procedures—a hemilaminectomy, mastoidectomy, urethrotomy and an operation on a plantar neuroma. She fell while at work either in August or October of 1971 and did not return to work after October 27, 1971. This injury eventually required surgical treatment for excision of a torn medial meniscus of her right knee. When Dr. Brady examined Mrs. Bryant on November 16, 1971, he noted pain medially on external rotation with the knee in flexion and pain on flexion extension and external rotation. Also, he stated that the grind test was painful with external rotation and that the distraction test in external rotation was painful. His other examinations through May 24, 1972, revealed pain associated with her right knee. Mrs. Bryant's primary treating physician, Dr. Vernon, obviously found upon examination that she was in pain during this period of time because he injected her regularly with medications for the relief of moderate to severe pain. Eight months after her knee surgery in February, the plaintiff underwent a hemilaminectomy. Between February and November 1972, Dr. Vernon continued to inject Mrs. Bryant with Talwin or Levoprome on a regular basis. Since her surgery in November 1972, the plaintiff has visited Dr. Vernon regularly and he has continued to inject her with pain medication.

The overwhelming evidence of record establishes that the plaintiff was disabled prior to March 31, 1972, because of her numerous medical problems and resulting pain. Such is her testimony, and all of the medical records establish the existence of these physical problems. Accordingly,

the Magistrate's recommendation that this case be remanded is rejected and the Secretary's decision that·the plaintiff is not entitled to a period of disability or to disability insurance benefits is, hereby, reversed. This case is remanded to the Secretary with instructions to award the benefits claimed.

AND IT IS SO ORDERED.