**Marjorie DIXON, Plaintiff,**

v.

**Otis BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

No. 85 C 4337.

United States District Court, N.D. Illinois, E.D.

Aug. 30, 1988.

James J. Marszalek, John E. Marszalek, Chicago, Ill., for plaintiff.

Gail C. Ginsberg, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff Marjorie Dixon brings this action pursuant 42 U.S.C. § 405(g) of the Social Security Act, seeking judicial review of the Secretary of Health and Human Services' ("Secretary's") denial of her application for Social Security Disability Insurance. Mrs. Dixon's case returns to us following remand to the Secretary by our order of August 25, 1986. On August 21, 1987, Administrative Law Judge Charles G. Walsh found in his recommended order that Mrs. Dixon was under a disability as defined by the Social Security Act, 42 U.S. C. §§ 301 *et seq.,* during the period of February 1978 until the date of his decision.

The Appeals Council, however, found that Mrs. Dixon's period of disability did not begin until June 7, 1982.

Both Mrs. Dixon and the Secretary have filed what we will treat as cross-motions for summary judgment, even though the briefing schedule set out in the Minute Order of April 14, 1988 reflected only plaintiff's plan to file a motion for summary judgment. We may enter summary judgment for a non-moving party so long as "the original movant has had an opportunity to demonstrate that his opponent is not entitled to judgment as a matter of law," *Lindsey v. Bureau of Prisons, U.S. Dept. of Justice,* 736 F.2d 1462, 1463 (11th Cir.) (citations omitted), *vacated on other grounds,* 469 U.S. 1082, 105 S.Ct. 584, 83 L.Ed.2d 695 (1984). Since Mrs. Dixon was able to reply to defendant's claims, she is not prejudiced here by our treating defendant's response as a cross-motion.

### Facts and Procedural History

Mrs. Dixon worked at General Electric as a coil loader, tap puller and solderer until she was injured at work on July 31, 1975. Mrs. Dixon received disability benefits from January 24, 1977 based on severe degenerative disc disease of the cervical nerve roots C5–6 and cervical strain, (Tr. 209), until the Secretary terminated the benefits effective April 1978. (Tr. 210). Mrs. Dixon's reapplication for benefits on December 12, 1979 based on the loss of use of her left hand and arm was denied by ALJ Caminisch on June 18, 1980. The Appeals Council denied review, and Mrs. Dixon did not pursue her right of judicial review. The application before this court for review was filed on March 24, 1981, in which Mrs. Dixon claimed that her disabilities never ended. (Tr. 136). The various proceedings before the Secretary on Mrs. Dixon's various claims are more fully described in the Court's Memorandum Opinion of August 5, 1986, remanding Mrs. Dixon's claim to the Secretary for consideration of evidence in support of her claim and resolution of any conflicts in the evidence.

Following remand by this court, the Appeals Council remanded Mrs. Dixon's case to an ALJ to consider "all relevant medical evidence and resolve any conflict that he may find." (Tr. 374). In addition, the ALJ was ordered to seek additional vocational expert testimony, if the evidence of impairment in the use of Mrs. Dixon's left hand made such testimony appear necessary.

ALJ Charles G. Walsh heard Mrs. Dixon's case on June 11, 1987. ALJ Walsh considered the medical evidence of record dating from 1975, Mrs. Dixon's testimony and the testimony of two vocational experts. ALJ Walsh noted especially the medical reports of Dr. Nauman (Tr. 198–99) and Dr. Bavishi (Tr. 201–03). Dr. Nauman's report was based on an examination made on October 25, 1976; Dr. Bavishi's report was based on an exam conducted on December 7, 1982. The testimony of Mrs. Dixon before ALJ Walsh concerned pain in her neck, back and hips and numbness in her hands. (Tr. 305).

ALJ Walsh entered a recommended decision finding Mrs. Dixon to be under a disability, as defined by the Social Security Act (20 CFR § 404.1520(f) (1985)). In arriving at this conclusion, he found that Mrs. Dixon had some residual functional capacity but that in light of her age, education and past work experience, jobs which Mrs. Dixon is capable of performing do not exist in significant numbers in the national economy. (Tr. 307). Finally, ALJ Walsh found that Mrs. Dixon had met the special earnings requirements of Title II of the Social Security Act only through March 31, 1983. (Tr. 304).

Upon return to the Appeals Council pursuant to 20 CFR § 404.977(c) (1987), ALJ Walsh's decision was modified in the following ways. The Council found that the June 18, 1980 decision of ALJ Caminisch, denying Mrs. Dixon's benefits, was final and binding for the period up until that date because of the doctrine of *res judicata*. In considering the period from June 19, 1980 to March 31, 1983, the Council reviewed the medical evidence considered by ALJ Walsh as well as reports of exams by Dr. Rabinowitz (Tr. 112–14) made on July 13, 1979 and Dr. Sadlek (Tr. 132–33) made on May 1, 1980. The Council con-

cluded, on the basis of the reports, that Mrs. Dixon had "residual functional capacity for light work activity" so that she could perform her previous job as a line loader until June 7, 1982 when her functional capacity "was of such a nature that she was unable to do her past work or other jobs existing in significant numbers in the national economy." (Tr. 286–87).

### Standard of Review

Plaintiff and defendant have moved for summary judgment under Fed.R.Civ.P. 56(b). Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding both motions, we must review the evidence in a light most favorable to the non-movant and deny the motion "[i]f the evidence is subject to conflicting interpretations, or if reasonable people might differ as to its significance,...." *Rodeo v. Gillman*, 787 F.2d 1175, 1177 (7th Cir.1986) (citations omitted).

### Analysis

Scope of Review.

■ Because ALJ Walsh and the Appeals Council came to different conclusions with regard to Mrs. Dixon's period of disability, we must consider the record as a whole—including the conflicting findings of ALJ Walsh—to determine whether the Appeals Council's decision is supported by substantial evidence. *Bauzo v. Bowen*, 803 F.2d 917, 922 (7th Cir.1986), *citing Universal Camera Co. v. NLRB*, 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951). Following the direction of the *Bauzo* court, our review focuses upon the decision of the Appeals Council to determine whether it is supported by substantial evidence. In making this review, however, one factor which weighs against upholding the Council's decision is the conflict with the findings of ALJ Walsh. Even if the ALJ's decision was also supported by substantial evidence, the Appeals Council's decision will be upheld so long as it complies with the substantial evidence standard. *Bauzo*, 803 F.2d at 921.

The substantial evidence standard requires "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

Mrs. Dixon complains of two errors in the decision of the Appeals Council: (1) the Appeals Council ignored her testimony about her pain which was noted by ALJ Walsh in his favorable decision, and (2) "the Appeals Council ignored the testimony of the two vocational experts in finding that Mrs. Dixon from June 19, 1980 to June 7, 1982, had the residual functional capacity for light work activity." Plaintiff's Brief at 15–16. Keeping in mind these two complaints of error, we assess Mrs. Dixon's record according to the substantial evidence standard.

Res judicata.

The decision of ALJ Caminisch was not reviewed by the Appeals Council and Mrs. Dixon did not request judicial review; that decision is therefore final and binding on all parties. 20 CFR § 404.955 (1980). The Secretary may deny review of a final decision because of the doctrine of *res judicata*, as the Appeals Council did in its decision regarding Mrs. Dixon's eligibility for disability from May 1, 1978 to June 18, 1980. 20 CFR § 404.957(c)(1) (1981). The decision of the Appeals Council is consistent with the earlier decision of this court. (Memorandum Opinion, August 5, 1987 at 3) ("her first date of eligibility for a period of benefits is June 18, 1980").

The Secretary, however, is free to reopen a decision within four years of the notice date of the original decision upon a showing that "new and material evidence is furnished." 20 CFR §§ 404.988, 404.989 (1986). This is the rationale behind ALJ Walsh's reopening of the cessation determination. (Tr. 306). The Appeals Council, on the other hand, found that there was not good cause for reopening, since the evi-

dence considered by ALJ Walsh was not "new and material." (Tr. 284). The Council found that the medical reports of Drs. Nauman (10/25/76) and Bavishi (12/7/82) were not material, because they covered Mrs. Dixon's condition at times before and after the May 1, 1978 to June 18, 1980 period. The vocational evidence heard by the ALJ was not material, because it depended on Mrs. Dixon establishing "exertional and nonexertional limitations," which the Appeals Council found were not reflected in the medical record until December 1982.

The decision of the Secretary not to reopen a claim is generally not reviewable under 42 U.S.C. § 405(g). *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). However, the Secretary omits from his bald statement of the *Sanders* rule, Defendant's Brief at 3, the well-established authority of a district court to make a limited review of the Secretary's decision. *McGowen v. Harris,* 666 F.2d 60, 66 (4th Cir.1981). Since a court has jurisdiction to determine its own jurisdiction, we may determine whether *res judicata* was correctly applied pursuant to the Secretary's rules or whether Mrs. Dixon's claim was actually or constructively reopened in spite of the Secretary's putative denial of the request to reopen. *Ibid.* *See also Meridith v. Bowen,* 833 F.2d 650, 653 n. 2 (7th Cir.1987) (finding *res judicata* inapplicable because the Secretary reopened and reconsidered the merits of the claimant's case); *McGee v. Bowen,* 647 F.Supp. 1238, 1244–45 (N.D.Ill.1986); *Tolbert v. Secretary of Health and Human Services,* 537 F.Supp. 631, 633 (N.D.Ill. 1982).

That Mrs. Dixon's most recent disability claim is the same claim as the one decided by ALJ Caminisch in June 18, 1980 is not disputed. Mrs. Dixon argues, however, that ALJ Walsh constructively reopened the Secretary's cessation determination. The fact that the Secretary has considered new evidence does not necessarily constitute the constructive reopening of a claim. *McGowen,* 666 F.2d at 67. "[T]he Secretary must in fairness look far enough into the proffered factual and legal support to

determine whether it is the same claim, and if so, whether it should nevertheless be reopened as a discretionary matter." *Ibid.* In Mrs. Dixon's case, ALJ Walsh justified his reopening of her claim by saying that he had considered new and material evidence. His consideration of evidence in order to determine whether it is new and material did not in itself constitute a reopening.

The Appeals Council took a contrary view on the reopening issue. Following the guidance of *Bauzo,* we must uphold the Appeals Council's decision, if it is supported by substantial evidence. If the Council's decision meets that standard, the fact that ALJ Walsh reevaluated Mrs. Dixon's claim on the merits is of no account. We would subvert the policies of the *Bauzo* decision and of the doctrine of *res judicata* by responding to an ALJ's erroneous reopening of a final decision with a substantial evidence review on the merits.

■ After considering the record, we find that the evidence could reasonably lead the Appeals Council to the decision that the evidence considered by ALJ Walsh was not "new and material" for purposes of establishing "good cause" as required by 20 CFR § 404.988. As noted by the Appeals Council, the report of Dr. Naumann covers Mrs. Dixon's condition before the period in question, while the report of Dr. Bavishi's exam of December 7, 1982 is couched in terms only of Mrs. Dixon's disabled condition *at the time of the exam.* Neither is, therefore, material to the pre-June 18, 1980 period. Administrative *res judicata,* therefore, forecloses Mrs. Dixon's claim for that period.

Appeals Council's decision regarding the period from June 19, 1980 to June 7, 1982.

■ Two steps are followed in determining a disability under the Social Security Act. The claimant has the burden of showing she is disabled by demonstrating that she has a listed impairment, 20 CFR § 404.1520(d) (1985), or that she cannot do her previous work. 20 CFR § 404.1520(e). *Tom v. Heckler,* 779 F.2d 1250, 1252 (7th

Cir.1985). If the claimant meets this burden, then the Secretary has the burden of showing that there is work available in the national economy which the claimant could do. *Id.* at 1253. The Appeals Council found that from June 19, 1980 until June 7, 1982, Mrs. Dixon was capable of doing her past work. This constituted a finding under 20 CFR § 404.1520(e) that Mrs. Dixon had not made out a *prima facie* case of a disability.

The two errors noted by Mrs. Dixon in the Appeals Council's decision concern the period from June 19, 1980 to June 7, 1982. She claims that the Council ignored the evidence of the vocational experts in concluding that she was capable of doing her past work. The record shows, however, that the Council did not ignore this evidence, but found that the physical limitations which the vocational experts relied on were not established until December 1982. This vocational evidence is only relevant if Mrs. Dixon can establish that in 1980 she had a severe impairment in the use of her upper extremities which made it impossible for her "to push and pull and perform gross to fine manipulations." (Tr. 62, 344–45). We, therefore, turn now to Mrs. Dixon's physical impairments and specifically to the second error noted by Mrs. Dixon, the Council's treatment of her testimony about her pain.

The second error noted by Mrs. Dixon is that the Council ignored her complaints of pain. The Secretary claims that the Council did not ignore her complaints but found that they were not credible. The Secretary argues that the "Council found that the objective medical findings during the period at issue were not of the severity that would reasonably produce severe, disabling pain." Defendant's Brief at 9.

Mrs. Dixon is required, under the Secretary's regulations to provide evidence of "medical signs or findings ... that there is a medical condition that could be reasonably expected to produce those symptoms." 20 CFR § 404.1529 (1987), *Sparks v. Bowen*, 807 F.2d 616, 618 (7th Cir.1986).[1] ALJ Walsh found Mrs. Dixon's testimony of pain in her back and neck to be "credible in view of the x-ray evidence of marked degenerative arthritis and disc space narrowing in the cervical spine." (Tr. 306). The Appeals Council did not specifically mention the issue of Mrs. Dixon's pain but modified ALJ Walsh's findings to read that "[t]he claimant's allegations of severely disabling symptoms were not credible to the extent alleged prior to June 7, 1982." (Tr. 286). The Council gave no reasons for finding Mrs. Dixon's testimony to be incredible.

It is not the function of this court to reweigh the evidence regarding Mrs. Dixon's claim and substitute our judgment for that of the Secretary. *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987). However, it is our function to review the Secretary's —here, the Appeals Council's—findings under the substantial evidence standard. We find that the Council's findings, which rely primarily on the one paragraph report of Dr. Bavishi of his June 1981 examination, do not reasonably support the conclusion that Mrs. Dixon was able to do her past work. In reaching its conclusions, the Appeals Council was required to consider both the medical evidence and the subjective evidence of Mrs. Dixon's pain and disabilities. *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982). There need not be direct evidence of pain, so long as there is evidence of a condition that could be reasonably expected to produce pain. *Sparks*, 807 F.2d at 618. Where the "Appeals Council rejects an ALJ's credibility findings, it should do so expressly and state its

---

1. The requirement of 42 U.S.C. § 423 that a claimant produce objective evidence of a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged ..." applies only to determinations made prior to January 1, 1987. 98 Stat. 1799 (1984). However, the Senate Finance Committee explained that the statutory requirement was made only temporary in order to "fully restore the Administration's current degree of flexibility to implement regulatory changes...." S.Rep. No. 466, 98th Cong., 2d Sess. 24 (1984). In any case, as the Secretary points out, Defendant's Brief at 5, n. 4, the Senate Finance Committee made it clear that "termination of the provision would not modify the rules governing the program." *Ibid.*

reasons for doing so." *Bauzo*, 803 F.2d at 922.

As of June 18, 1980, there is evidence in the record of a condition which could reasonably be expected to cause Mrs. Dixon pain. After examining Mrs. Dixon on May 1, 1980, Dr. Sadlek reported that there was x-ray evidence of narrowing of the intervertebral space between C5 and C6, as well as intervertebral disc degeneration.[2] ALJ Walsh relied upon x-ray evidence of disc space narrowing and degenerative arthritis in finding that Mrs. Dixon's testimony regarding her pain was credible. (Tr. 306). The June 1981 report of Dr. Mehta could also reasonably support a claim of pain. He writes that "[t]his patient continues to have symptoms in the left hand and some pain in the lower back."[3] (Tr. 180).

Because ALJ Walsh found, after considering both the medical evidence and Mrs. Dixon's testimony, that Mrs. Dixon was disabled during the period from June 19, 1980 to June 7, 1982, we may accept his findings so long as they are supported by substantial evidence. The *Bauzo* decision only requires that we uphold the Council if its decision is supported by substantial evidence. We are, therefore, free here to turn to the contrary findings of ALJ Walsh.

ALJ Walsh wrote as follows of Mrs. Dixon's subjective evidence in favor of her claim:

> [Mrs. Dixon] testified that she injured her back while lifting a box at work. She stated that since that time, she has had pain in her neck, back, hips and numbness in both hands in addition to dizziness. She often wears a cervical collar as a result of the pain in her neck. She cannot stand or sit for more than 20 minutes at a time and does not perform any household chores or drive an automobile. She takes prescriptive medication for her pain.

(Tr. 304).

This evidence of numbness in Mrs. Dixon's arms and pain in her back and neck, combined with the testimony of the vocational experts, could reasonably lead to the conclusion that Mrs. Dixon was incapable of performing her past work. It is reasonable to conclude that numbness in Mrs. Dixon's arms as well as the pain in her back and neck would cause a severe impairment in the use of her upper extremities.

We have pointed out in our discussion of administrative *res judicata* that ALJ Walsh relied primarily on the two medical reports of Drs. Bavishi and Nauman. Although he does not discuss the two reports which more closely relate to the June 19, 1980 to June 7, 1982 period—those of Drs. Sadlek and Mehta—we find that those omissions do not undermine the findings of ALJ Walsh. Those reports, although not specifically mentioned, support the conclusions of ALJ Walsh that Mrs. Dixon's pain testimony was credible as to the entire period from June 19, 1980 to June 7, 1982. In addition, Dr. Sadlek's findings of osteoarthritis and spurring of C5, acute cervical strain, traumatic myositis (inflammation of the muscle), synovitis (inflammation of the membrane lining the interior of joints, etc.) in the left anterior and posterior muscles of the neck and impaired motility of the left hand as well as his conclusion that Mrs. Dixon suffered "major industrial loss of upper extremities" (tr. 133) only add support to ALJ Walsh's findings and do not conflict with them. Especially important with regard to this report is that Doctor Sadlek found Mrs. Dixon's "[d]isability is 90% permanent." (Tr. 133).

---

**2.** Although the Secretary writes that "Dr. Mehta's June 1982 report is the only one in the record which relates directly to the two year period in dispute," Defendant's Brief at 8, the exam by Dr. Sadlek was conducted only one month before the first date for which Mrs. Dixon is eligible for benefits. The report's close proximity in time coupled with the fact that Mrs. Dixon's condition is a progressive make it unlikely that Mrs. Dixon condition improved significantly before June 19, 1980.

**3.** The fact that Dr. Mehta did not prescribe Mrs. Dixon medication at this examination does not, as the Secretary implies, mean that Mrs. Dixon was not taking pain medication or that she was not suffering from pain. In fact, Dr. Bavishi states in his December 7, 1982 report, that, "[s]he *has been* taking Empirin # 3 as well as Equagesic for pain." (Tr. 201) (emphasis added).

Dr. Mehta's one paragraph report from 1981 does not have any significant impact on ALJ Walsh's findings. We have already noted that Dr. Mehta's report could reasonably support Mrs. Dixon's pain testimony. The fact that there was "no obvious atrophy of the muscles" (tr. 180) of Mrs. Dixon's left hand does not mean that she was able, in light of her numbness, to do her past work. The "good range of motion" in Mrs. Dixon's spine does not ameliorate Mrs. Dixon's impairment in the use of her upper extremities nor does it undermine Mrs. Dixon's claim of back pain related to the medical conditions of disc space narrowing and osteoarthritis.

Dr. Rabinowitz, who examined Mrs. Dixon on a consultative basis on July 12, 1979, reported his opinion that Mrs. Dixon was capable of light work on that date. (Tr. 116). However, that report does not alter our conclusion that substantial evidence supported the decision of ALJ Walsh. The exam was conducted almost a year before the first date of Mrs. Dixon's elibility for benefits. It is, therefore, reasonable to conclude that Mrs. Dixon's progressive medical condition deteriorated during that time.

ALJ Walsh found, pursuant to 20 CFR § 404.1520(f), that there were "not a significant number of jobs in the national economy which [Mrs. Dixon] could perform" (tr. 307) during the June 19, 1980 to June 7, 1982 period. We find that substantial evidence supports this conclusion, since both vocational experts testified that if Mrs. Dixon were subject to a severe impairment of her upper extremities, then she would not be able to perform most, if not all, similar jobs available in the economy.

In sum, we find that ALJ Walsh's finding with regard to the June 19, 1980 to June 7, 1982 period are supported by substantial evidence, while those of the Appeals Council are not. We reverse the decision of the Secretary as to this period, since "the plaintiff's entitlement is clear from the record and ... a remand would simply delay receipt of deserved benefits." *Bryant v. Harris*, 494 F.Supp. 932, 933 (D.S.C.1980), *citing Grable v. Secretary of HEW*, 442 F.Supp. 465 (W.D.N.Y.1977). *See also, Atkins v. Califano*, 446 F.Supp. 1017, 1023 (N.D.Ill.1978), *Fields v. Harris*, 498 F.Supp. 478, 498 (N.D.Ga.1980).

Conclusion

There is no genuine issue of material fact as to the evidence in Mrs. Dixon's case, so we may grant or deny the cross-motions as a matter of law. For the period from April 1, 1978 until June 18, 1980, we grant defendant's motion and deny plaintiff's motion. For the period of June 19, 1980 to June 7, 1982, we find as a matter of law that Mrs. Dixon's claim of disability is supported by substantial evidence in the record. We, therefore, grant plaintiff's motion and deny defendant's motion as to the period from June 19, 1980 to June 7, 1982. The decision of the Secretary is reversed as to the period from June 19, 1980 until June 7, 1982, and the Secretary is ordered to award Mrs. Dixon the benefits owed her. An appropriate order will be entered.